The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams* (1992), 82 Ohio App.3d 39.]

Court of Appeals of Ohio,
Logan County.

No. 8–92–6.

Decided Aug. 26, 1992.

---

*William T. Goslee*, Chief City Prosecutor, for appellee.

*Marc S. Triplett*, for appellant.

---

EVANS, Judge.

This is an appeal by James Williams from a judgment of conviction entered in the Bellefontaine Municipal Court after appellant's motion to suppress evidence of his breath-alcohol content was denied.

On October 10, 1991, appellant was stopped by an trooper of the Ohio State Highway Patrol for driving in excess of one hundred miles per hour. After stopping appellant's vehicle, the trooper realized appellant was intoxicated. Having failed the field sobriety tests, appellant was transported to the Logan County Sheriff's Office, where he agreed to submit to a breath test that resulted in a reading of .264 grams of alcohol per two hundred and ten liters of breath. Appellant was charged with driving while intoxicated in violation of R.C. 4511.19(A)(3).

On December 6, 1991, appellant filed a motion to suppress the results of his breath test. In this motion, appellant alleged the B.A.C. Verifier was not properly tested for radio frequency interference ("RFI").

On December 17, 1991, the municipal court heard evidence on the motion to suppress. Trooper Rhodes of the Ohio State Highway Patrol testified that he and Trooper Hilbert performed an RFI survey on the B.A.C. Verifier located at the Logan County Sheriff's Office on September 7, 1991. Trooper Rhodes testified they tested the very high frequency ("VHF") and the ultra high frequency ("UHF") bands using four radios, two radios for each band. Trooper Rhodes remained with the B.A.C. Verifier machine and had one radio for each band. With the other two radios, Trooper Hilbert walked the thirty-foot radius toward the B.A.C. Verifier. Trooper Hilbert had one radio in each

hand. As he walked each of the eight axes toward the machine, he would key the transmit button on one of the radios, take a couple of steps, release the transmit button, then key the other radio and take a couple of steps. This alternate transmission between the two bands was employed until the B.A.C. Verifier identified the presence of RFI. The location where RFI was detected was noted on separate forms for each band.

Appellant complained this alternating between testing the two bands did not substantially comply with the requirements of Ohio Adm.Code 3701-53-02 or Appendix H of that section. Appellant contended Trooper Hilbert should have walked each of the eight axes twice, once for each of the two radio bands being tested, and should have continually keyed the transmit button. The trial court did not find the procedure employed in performing the RFI survey to be deficient and denied the motion to suppress. Subsequently, appellant changed his plea to no contest, and was found guilty and sentenced.

From this judgment, appellant appeals assigning two errors, which state:

"The trial court erred in admitting the results of the BAC Verifier because the RFI survey had not been properly conducted.

"The trial court erred when it admitted the results of the BAC Verifier when sufficient testimony was admitted that the BAC Verifier had been subjected to potential radio interference."

■ Appellant's argument in support of his first assignment of error contends that Trooper Hilbert's alternating between the two radios was improper and thereby tainted the results of the RFI survey. The argument in support of appellant's second assignment of error asserts that the radios used by the jailers on the floor above the room where the B.A.C. Verifier was located would generate sufficient radio waves to interfere with the proper operation of the B.A.C. Verifier. The prosecution failed to file a brief rebutting these arguments.

At the hearing on the motion to suppress, appellant called Dr. Harry Shamansky as an expert witness to testify about the effects of RFI on the B.A.C. Verifier. Shamansky testified that "pockets" of interference exist and may have avoided detection as a result of the alternating sequence employed by the trooper, and, thus, the perimeter defining the RFI-affected zone around the B.A.C. Verifier could not be guaranteed as accurate. Shamansky indicated that Trooper Hilbert's alternate use of the radios while testing for the presence of RFI was not in strict compliance with the intent of the rules promulgated by the Director of Health. Specifically, Shamansky stated:

"* * * I think perhaps more damaging or of greater concern from a technical viewpoint, as well as from a, from the regulations as they are stated, nowhere in the regulations does it indicate or suggest in any way that a survey should be performed simultaneously. For the very simple reason, the surveys are designed and specifically state that an individual starts with a transmitting antenna or radio, start at the first axis, at the end of that axis, transmit continually while approaching the machine. It's a very simple scientific principle. The idea is * * * to locate at what distance, at what maximum distance interference is noted.

"It is unacceptable and improper both technically and through the regulations to perform that in a piecemeal fashion. In other words, to begin transmitting and stop transmitting and to begin transmitting and stop transmitting, covering perhaps a portion or various portions of that survey. * * *"

In rebuttal to Shamansky's testimony, the prosecution called Brian McMillen, the Director of Engineering for National Analytical Systems, which manufactured B.A.C. Verifier machines. McMillen testified that the intermittent distances which were not tested for RFI would have had no substantial effect on the survey results. He stated:

"The one-and-a-half foot discrepancy creating pockets would—the probability of a pocket being in that, in that one-and-a-half foot area [the intermittent area where one of the other radios was not keyed], in my opinion, is the same probability that you've missed that pocket if you had the radio in your left hand rather than your right hand as you approach the machine. * * * [I]n all of my testing of the, of the verifier, I've never found the RFI board to, in one case, find a pocket where if I started 17 feet and come in, I'm able to trigger that mechanism, whereas if I start at five feet, I'm not triggering it. I've never found points—

"Q. How many of those tests would you say you've done?

"A. Oh, I've spent hours. Hundreds of tests.

"Q. Hundreds of test[s]. And none of those have you ever found these pockets in this one-and-a-half feet that you're talking about?

"A. No."

The trial court had the testimony of two experts to consider in deciding whether the troopers who conducted the RFI survey substantially complied with the rules set forth in Ohio Administrative Code 3701–53–02. The determination of which testimony to rely upon was within the discretion of the

trial court. The weight to be given the evidence and the credibility of the witnesses are a determination to be made by the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 367, 227 N.E.2d 212, 213.

" * * * The findings of fact by the trial court which heard the testimony and the appearance-point-of-view of the witnesses upon the controlling facts in the case will not be set aside when there is nothing in the record to show that the court manifestly disregarded the weight of the evidence or violated any principle of law in making its findings in arriving at its conclusions." *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 141, 36 O.O.2d 288, 292, 219 N.E.2d 221, 226.

We conclude there is sufficient evidence in the record to support the trial court's finding that the troopers substantially complied with the requirements for conducting the RFI survey. The trial court heard the testimony and weighed it accordingly. Absent an abuse of discretion, the findings of the trial court will not be reversed by a reviewing court.[1]

Appellant's assignments of error are overruled.

Having found no error prejudicial to the appellant herein in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.

---

1. While we do not reverse the trial court's finding that there was substantial compliance, we point out to prosecutors and the law enforcement officials who conduct RFI surveys that the requirements of Ohio Adm.Code 3701–53–02 must be followed. RFI surveys represent an important step in qualifying the results of a breath test for admission into evidence. Although the RFI survey is not done as frequently as the weekly calibration of the machine, it is just as important. The regulations which prescribe the procedure for an effective RFI survey should be followed without deviation or "shortcuts" in order to avoid a challenge such as in this case.