Defendant-appellant, Jerry W. Bishop, appeals his conviction for murder and sentence of fifteen years to life imprisonment.
At the time of his offense, appellant was an inmate at the Madison Correctional Institution ("MCI"). On April 25, 1996, appellant, fellow inmate John Stojetz, and four other inmates — all of whom were members of the Aryan Brotherhood, a white-separatist gang led by Stojetz — cornered Damico Watkins, a black juvenile inmate at MCI, inside the juvenile cell block and stabbed him to death. Appellant and his co-defendants were separately indicted and tried for the murder.
Eight months prior to the stabbing, appellant had been transferred to MCI from Trumbull Correctional Institution ("TCI"). Appellant was transferred because he complained that the Aryans at TCI had threatened him for refusing to smuggle drugs for them. Despite these alleged threats, appellant was seen associating with the Aryans at MCI soon after his transfer. At least two weeks before the attack, appellant was tattooed with an "A.B.," the sign of the Aryan Brotherhood.
Just before noon on April 25, the defendants met outside of Adams Alpha ("Adams A"), the cell block which housed juveniles tried and convicted as adults. Adams A was in lock-down for a head count before lunch. One member of the Aryan group handed out shanks[1] to the other defendants. They subdued a prison guard, and forced him to give them the keys to the cell block. After allowing the guard to escape, the group walked to Watkins' cell. One member of the group stood at the main door, brandishing his shank to keep others out of the cell block.
Appellant unlocked the door to Watkins' cell, whereupon Stojetz and another Aryan entered the cell and began to stab Watkins. Watkins was able to escape the cell, and proceeded to run around Alpha A in an attempt to evade his attackers. Members of the group followed, continuing to stab Watkins. Appellant blocked Watkins' attempt to escape out of a second floor emergency door. Three witnesses testified that appellant then stabbed Watkins at least twice. Moments later, Watkins collapsed and died on the second floor walkway. He had been stabbed more than forty times. At some point during the attack, someone had used Watkins' blood to write "Don't fuck with the A.B." on the wall of Watkins' cell.
Once Watkins had collapsed, the Aryans, including appellant, gathered at the doorway and began screaming at the guards and other inmates to the effect, "We took care of business because you don't. We're not going to cell with blacks. There's a couple of dead * * * niggers in there." They then surrendered and passed the shanks through a window in the main door to the cell block.
At trial, the state established three motives for the attack. Watkins had been involved in an attack upon a young white inmate, and the Aryans sought revenge for the attack. Also, the group was sought to intimidate the black inmates at MCI. Finally, the Aryans wanted transfers to the higher security Southern Ohio Correctional Facility at Lucasville, Ohio ("Lucasville"), a more segregated environment. An attack such as this one was considered likely to result in such a transfer.
On October 10, 1996, appellant was indicted for aggravated murder, the purposeful killing of Damico Watkins with prior calculation and design, under R.C. 2903.01,[2] and a capital punishment specification pursuant to R.C. 2929.04(A)(4), alleging that he was an inmate in an Ohio corrections facility at the time of the attack. Counsel was appointed to represent appellant, and a jury trial commenced in the Madison County Court of Common Pleas on July 14, 1997. On July 23, 1997, the jury found appellant guilty of the lesser included offense of murder. At the sentencing hearing, the court sentenced appellant to a term of fifteen years to life, consecutive to the sentence he was already serving.
On July 25, 1997, the court filed its judgment entry, which omitted the term "consecutive." The omission was brought to the court's attention, and it filed an amended entry, nunc pro tunc, on July 29, 1997, which corrected the omission.
Appellant appeals his conviction and the trial court's amended entry, presenting five assignments of error. For the reasons that follow, we overrule all of the assigned errors and affirm his conviction.
In his first assignment of error, appellant alleges that the trial court erred by refusing to give a requested jury instruction on involuntary manslaughter. In his second assignment of error, appellant argues that the trial court further erred by failing to give requested jury instructions on felonious assault and causation. The two requested instructions were both tied to the jury charge on involuntary manslaughter. Appellant argues that evidence of "purpose"[3] was lacking, and that the evidence presented was ambiguous, entitling him to the requested instructions. Appellant also asserts in his second assignment of error that the trial court erred in by giving a jury instruction on murder and aiding and abetting which was internally inconsistent. Appellant contends that the instruction, as given, allowed the jury to believe that it could convict appellant without finding intent on his part. We find that these arguments lack merit.
For purposes of clarity and brevity, we will address he first assignment of error and that part of the second assignment of error concerning the requested jury instructions as one issue. We will then address the remaining part of appellant's second assignment of error, which contends that the murder and aiding and abetting instruction given was inconsistent.
The general rule with regard to proposed jury instructions is that "`if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge.'" State v. Snowden (1982),7 Ohio App.3d 358, 361, quoting Cincinnati v. Epperson (1969),20 Ohio St.2d 59, paragraph one of the syllabus. The trial court may refuse a proposed instruction where the issue covered in the instruction has not been raised by the evidence. Snowden,7 Ohio App. 3d at 361-62.
A trial court's refusal to give requested jury charges based upon the evidence at trial is reviewed for abuse of discretion. State v. Endicott (1994), 99 Ohio App.3d 688, 693; see State v. Wolons (1989), 44 Ohio St.3d 64, 68. "Abuse of discretion" is more than just an error of law or judgment; it implies that the attitude of the court was "unreasonable, arbitrary or unconscionable." Id., quoting State v. Adams (1980), 62 Ohio St.2d 151,157; State v. Weaver (1988), 38 Ohio St.3d 160, 161.
The trial court instructed the jury on aggravated murder, as well as the capital specification. The trial court also charged the jury on the lesser offense of murder. The court correctly instructed the jury that if it found appellant not guilty of aggravated murder or could not reach a unanimous verdict on aggravated murder, it should then proceed to consider whether appellant was guilty of the lesser offense of murder. See State v. Thomas (1988), 40 Ohio St.3d 213, 220, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89, paragraph three of the syllabus. The trial court also charged the jury that if it found that the state had proven all of the elements of aggravated murder, their verdict must be guilty of aggravated murder, and in that case, they were not to consider the lesser charge of murder. See id. The court denied appellant's request for instructions on involuntary manslaughter, felonious assault, and causation.
Involuntary manslaughter is a lesser included offense of aggravated murder, id., paragraph one of the syllabus, and an instruction on the lesser offense is proper only if the evidence would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. Id., paragraph two of the syllabus; State v. Benge (Dec. 5, 1994), Butler App. No. CA93-06-116, unreported, affirmed (1996), 75 Ohio St.3d 136. The sole difference between aggravated murder and involuntary manslaughter is the element of "purposely." Thomas,40 Ohio St.3d at 217. Accordingly, an instruction on involuntary manslaughter is warranted only if the evidence adduced at trial would reasonably support the conclusion that a defendant did not specifically intend to cause the death. See Benge. The charge is required when
 the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense.
State v. Kidder (1987), 32 Ohio St.3d 279, 282-83.
Only if the jury could reasonably find against the state on the element of purposely and yet still find for the state on the defendant's act of killing another will a defendant be entitled to an instruction on involuntary manslaughter. Id. If it is impossible for the trier of fact, under a reasonable view of the evidence, to acquit the defendant on the greater offense (aggravated murder), but convict upon the lesser offense (involuntary manslaughter), then a charge upon the lesser offense should not be given. Thomas, 40 Ohio St.3d at 217; State v. Hill (1996), 108 Ohio App.3d 279, 283.
Upon a thorough review of the record in this case, we hold that under no reasonable view of the evidence, even in a light most favorable to the accused, could the jury have found that appellant did not purposely intend Watkins' death. See Benge. First, the state provided three eyewitnesses who saw appellant stab Watkins. While the defense attacked the credibility of these witness, issues of credibility are left to the province of the jury, not the court. State v. Williams (1992), 82 Ohio App.3d 39,43, citing State v. DeHass (1967), 10 Ohio St.2d 230,231, 227. Second, the state provided tapes of two telephone calls made by appellant prior to the killing in which he indicated that something was about to happen at the prison. Third, the state introduced two letters written by appellant after the killing in which he specifically admitted to the killing, and further stated that killing Watkins was both for revenge and to prevent a future attack. Fourth, the state introduced statements about the killing made by Stojetz and other coconspirators after the killing, but before they surrendered. These statements did not specifically mention appellant's participation in the crime, but implicated the Aryan defendants as a group.
In considering the evidence as a whole and the applicable law, the trial court below stated that:
 [u]nder any reasonable analysis of the evidence I do not believe that the jury can find reasonably and rationally against the State on the issue of purposely or intentional conduct, and for that reason I decline to give the lesser included offense of involuntary manslaughter.
The evidence supports the decision of the trial court not to instruct on the lesser offense of involuntary manslaughter. Benge; See, also, State v. Bailey (1992), 90 Ohio App.3d 58,72-74, appeal dismissed (1994), 68 Ohio St.3d 1212.
By refusing to give the instruction on involuntary manslaughter, the trial court disposed of the underlying basis for the proposed charges on felonious assault and causation, which it found not pertinent to the evidence presented at trial. Both of the proposed instructions were to be read in conjunction with the charge on involuntary manslaughter. Since involuntary manslaughter was clearly inapplicable to the present case, a fortiori appellant's proposed charges were not required. Snowden,7 Ohio App.3d at 362.
A defendant is entitled only to have the law stated correctly by the trial court, not to have his proposed instructions presented to the jury. Id. at 363. Even though the court should generally view the evidence most favorably for the defendant in determining whether to give a jury instruction on a certain issue, in this case the state presented overwhelming evidence of the appellant's intent, which supports the trial court's decision. We find that the trial court did not abuse its discretion in refusing appellant's proposed instructions.
In his second assignment of error, appellant also alleges that the trial court erred to the prejudice of the defendant by giving an instruction that was inconsistent as to the requisite mental state required to find the defendant guilty of murder as an aider and abettor.[4] He claims that the jury charge may have led the jury to believe that if it found complicity it had to presume that appellant had the requisite purposeful mental state to convict him of murder. The state responds that when read as a whole, the jury instruction at issue was not flawed. We agree with the state.
The jury charge concerning murder and aiding and abetting given by the court substantially reflected relevant law.[5]
Intent on the part of an aider and abettor may be inferred where the facts show that the participants in the crime entered into a common design and either the aider and abettor knew that an inherently dangerous instrumentality was to be used in the crime or the felony and its manner of accomplishment would be reasonably likely to result in death. State v. Scott (1980),61 Ohio St.2d 155, 165.
Any ambiguity which may exist within the jury charge at issue is eliminated when the instruction is properly considered as a whole. See State v. Coleman (1988), 37 Ohio St.3d 286, 290, citing State v. Price (1979), 60 Ohio St.2d 136, certiorari denied, (1980), 446 U.S. 943, 100 S.Ct. 2169. When read as a whole, it is clear that the court fully explained to the jury that the inference of appellant's intent arising from his participation in the crime was not conclusive, and that even if the jury found that appellant was an aider and abettor, it was still required to find a specific intent to kill. See State v. Maurer (1984), 15 Ohio St.3d 239, 247, certiorari denied,472 U.S. 1012, 105 S.Ct. 2714. The court informed the jury that appellant's presence at the crime would not, by itself, be enough to support a conviction for aggravated murder. Rather, the jury was required to find a specific intent to kill before it could convict appellant. State v. Coleman (1988), 37 Ohio St.3d 286,288-90; State v. Taylor (1993), 66 Ohio St.3d 295, 307-08.
It must be noted that the state provided ample evidence of appellant's participation in the murder of Damico Watkins. The state introduced testimony of appellant's continuous association with the Aryan Brotherhood while at MCI. Appellant's phone calls alluding to the future crime and his letters afterward were also introduced. The state also presented three eyewitnesses who saw appellant chase and stab Watkins. Even if the instruction was arguably ambiguous in some minor respect, the state provided substantial evidence of appellant's intent and participation in the offense, and any error is harmless beyond a reasonable doubt. Crim.R. 52(A).[6]
Considering the evidence and the jury instructions as a whole, we find that the trial court did not err in refusing to give the proposed instructions, and that the instructions given were not inconsistent or erroneous. Appellant's first and second assignments of error are overruled.
In his third assignment of error, appellant asserts he was denied a fair trial based upon ineffective assistance of counsel and the failure of the trial court to sua sponte instruct the jury on duress and motive.
Appellant's claim of ineffective assistance of counsel is based upon trial counsel's failure to request jury charges on duress and motive. Appellant claims that sufficient evidence of duress and lack of motive were presented by the defense to warrant such instructions, and that failure of appellant's counsel to request these instructions was so deficient in performance as to have prejudiced appellant.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied,63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied, U.S., 118 S.Ct. 376. Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, id. at 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065; State v. Lytle (1976),48 Ohio St.2d 391, 397, vacated in part on other grounds, Lytle v. Ohio (1978), 438 U.S. 910, 98 S.Ct. 3135.
To be entitled to a jury instruction on the affirmative defense of duress, a defendant must prove by a preponderance of the evidence that he acted under duress or coercion. R.C.2901.05(A). In proving an affirmative defense, the defendant must show that he had a honest, good faith sense of present, imminent, immediate and impending death or serious bodily injury and that his actions resulted from this sense of harm. State v. Cross (1979), 58 Ohio St.3d 482, 487; State v. Grinnell (1996),12 Ohio App.2d 124, 143-44. The fear or the force used to compel the defendant into such conduct must remain constant, must control his will during the entire time in which he is acting, and must be of such a nature that he cannot safely withdraw. State v. Good (1960), 110 Ohio App. 415, 419. In the usual case, duress can be effectively shown only by the defendant testifying as to the fear or force which compelled him to act. State v. Mobley (July 22, 1997), Franklin App. No. 96AP-1039, unreported. The trier of fact is not bound by the arguments of the defendant, and may reject the defense on grounds of credibility. State v. Thompson (1994), 97 Ohio App.3d 629, 634.
This court finds that appellant has not shown that his conduct was due to continuous and present threats from another which, because of his fear of bodily harm or death, controlled his will and compelled him to associate with the Aryan Brotherhood in killing Damico Watkins. All evidence presented at trial clearly demonstrated that appellant was involved in the killing, and actively participated in it. Although he did introduce testimony from witnesses that he had felt threatened by the Aryan Brotherhood while he was at TCI, appellant had been at MCI for over eight months before the attack on Watkins. The state provided witnesses who observed appellant associate with the Aryan Brotherhood during his stay at MCI. Appellant's actions, absent any evidence to the contrary, contradict his claim of duress. See, generally, Grinnell, 112 Ohio App.3d at 145-46.
Considering the evidence presented, appellant's counsel was not ineffective because they did not seek a jury instruction on duress. Even if counsel had sought the instruction, the trial court would have been within its authority to refuse to give it, as appellant had failed to establish duress by a preponderance of the evidence. See id.
Appellant also claims that defense counsel were ineffective due to their failure to request an instruction on motive. We again disagree. The state presented evidence of motive through a variety of witnesses. Defense counsel had opportunity to attack the credibility of the state's evidence and to present its own case. Although proof of motive is always relevant in a criminal case as it relates to the mental state of a defendant, it is nonetheless not an essential element of the crime. State v. Findley (1973), 39 Ohio App.2d 166, 175-76.
Considering the evidence presented, and the fact that defense counsel did, in fact, seek to rebut the state's evidence of motive, we cannot say that the lack of a jury instruction on motive prejudiced appellant when considering the evidence as a whole. Nothing indicates that an instruction on motive would have altered the jury's verdict in light of the compelling evidence introduced against appellant. See Bradley, 42 Ohio St.3d 142 -44. Therefore, counsels' failure to request a jury instruction on motive was, at best, harmless error.
Appellant also asserts that it was plain error on the part of the trial court to fail to sua sponte give instructions on duress and motive. We find no merit in this contention.
Under plain error analysis, we must determine whether the substantial rights of the accused are so severely affected as to undermine the fairness of the guilt-determining process. Crim.R. 52(B);[7] State v. Swanson (1984), 16 Ohio App.3d 375, 377. It must appear that, but for the error, the result of the trial clearly would have been otherwise and that to not correct the error would be a clear miscarriage of justice. State v. Bock (1984), 16 Ohio App.3d 146, 150.
Appellant provided no evidence of duress or lack of motive at the time of the attack. Counsel did address these issues in closing argument, but such arguments are not evidence, and they are not binding upon the jury. State v. Frazier (1995), 73 Ohio St.3d 323,338, certiorari denied, U.S., 116 S.Ct. 820. Without evidence presented which would make either of these issues pertinent for instruction, we cannot say that the trial court erred by failing to instruct the jury on duress and motive. Certainly, such failure does not constitute plain error.
For all of the reasons set forth above, the third assignment of error is overruled.
In his fourth assignment of error, appellant asserts that the trial court erred to his prejudice by allowing, under Evid.R. 801(D)(2), the introduction of statements by appellant's co-conspirators. These were statements by Stojetz and others made directly after killing Watkins. Appellant contends that these statements were not made in the course of and in furtherance of the conspiracy, and thus should not have been allowed into evidence.
Matters of evidence are within the sound discretion of the trial court. State v. Tinch (1992), 84 Ohio App.3d 111, 127. If the decision of the trial court appears to be reasonable, a reviewing court may not reverse the judgment, even if the reviewing court would have reached a different conclusion. State v. Snowden (1982), 7 Ohio App.3d 358, 361. A decision to admit or refuse evidence will be reversed only if the trial court exceeds the bounds of its authority, and such abuse materially prejudices the defendant. State v. Joseph (1995), 73 Ohio St.3d 450, 460, certiorari denied, U.S. 116 S.Ct. 1277.
Statements by co-conspirators are exempted from the Hearsay Rule under Evid.R. 801 which states in pertinent part:
A statement is not hearsay if:
* * *
 (D) The statement is offered against the party and is * * * (2) a statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
An out-of-court declaration by a co-conspirator is admissible against the defendant upon proof: (1) of the existence of a conspiracy; (2) of the defendant's participation in the conspiracy; (3) of the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was made in furtherance of the conspiracy. State v. Daniels (1993), 92 Ohio App.3d 473,482, jurisdictional motion overruled, 68 Ohio St.3d 1449, cause dismissed, 68 Ohio St.3d 1479, reconsideration denied, 70 Ohio St.3d 1460.
The party seeking to introduce the co-conspirator's statement must independently prove that a conspiracy existed by evidence other than the hearsay statement. State v. Carver (1972), 30 Ohio St.2d 280, paragraph two of the syllabus, certiorari denied,409 U.S. 1044, 93 S.Ct. 542; State v. Martin (1983), 9 Ohio App.3d 150. The requirement of independent proof distinguishes Ohio practice from federal practice, where the hearsay statement may be used in establishing the underlying conspiracy. See, generally, Bourjaily v. United States (1987), 483 U.S. 171,176-181, 107 S.Ct. 2775, 2779-82. See, also, Giannelli Snyder, Rules of Evidence Handbook (1998) 237-38. In Ohio, independent proof must be established prima facie by evidence which "fairly raises a presumption or an inference of conspiracy." Martin,9 Ohio App. 3d at 152 (emphasis sic). A prima facie case is made out where the evidence introduced is sufficient to support, but not compel, a particular conclusion, and which only furnishes evidence which the jury may consider and weigh, but need not accept. Id., citing Cleveland v. Keah (1952), 157 Ohio St. 331.
In this case, the concerted action by Stojetz, appellant, and the others demonstrates a common purpose and plan. Furthermore, the statements made by appellant in his phone calls and letters, and the statements made by the other defendants, all establish group motivation and action. The evidence also showed appellant's participation in the conspiracy. For purposes of admissibility, the first three requirements of Evid.R. 801(D)(2) were satisfied.
Appellant contends that the statements do not fall within Evid.R. 801(D)(2) because they were made after the crime was completed, and not during the course of the conspiracy or in furtherance of the conspiracy.
 [W]here the crime has already been committed, and where the conspirators are no longer concerned with questions of concealment or identity, an out-of-court statement of a co-conspirator of the defendant which confesses his complicity in the crime and implicated the defendant is not a statement made "during the course and in furtherance of the conspiracy."
State v. Duerr (1982), 8 Ohio App.3d 404, 404, certiorari denied,464 U.S. 816, 104 S.Ct. 74.
However, appellant misconceives the trial court's finding of conspiracy and conspiratorial purpose. A conspiracy to commit a crime does not necessarily end with the commission of the crime. Daniels, 92 Ohio App.3d at 482-83; State v. Shelton (1977),51 Ohio St.2d 68, paragraph one of the syllabus, vacated in part (1978), 438 U.S. 909, 98 S.Ct. 3133.
 [A] declaration of a co-conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity.
Id. Furthermore, the acts and declarations of co-conspirators made after the crime has been committed may be admitted if they occur during the pendency of the unlawful enterprise and in furtherance of the common objective of the conspiracy. Daniels,92 Ohio App.3d at 483, citing State v. DeRighter (1945), 145 Ohio St. 552.
Until the purpose of the conspiracy had been fulfilled, i.e., completing the intimidation of others and being assured of the transfers, any statements made by appellant and his co-conspirators remained admissible. It is the pendency of the criminal enterprise which the court looks at in making its determination. Daniels, 92 Ohio App.3d at 483. In this case, the criminal act was only a means for that enterprise to achieve its objective. The statements were made after Watkins had been killed, but before the inmates had surrendered.
As the trial court found, the object of the conspiracy was not just to kill Watkins; it was also to intimidate the black inmates at MCI and to secure transfers to Lucasville. Killing Watkins was not the final object of the conspiracy; it was a means to achieve other goals, and until those goals were met, the conspiracy continued. Any statements made in the course of intimidating the other inmates or prison administration were made during and in furtherance of the conspiracy, and were thus admissible against appellant. We find that the court was well within its authority to admit the co-conspirators' statements into evidence. The fourth assignment of error is overruled.
In his final assignment of error, appellant contends that the trial court erred by amending its July 25, 1997 journal entry to conform to the sentence imposed at trial on July 22, 1997. The trial court's original entry failed to specify that appellant's sentence was to run consecutive to the sentence he was presently serving. Upon notification of this clerical omission, the court entered an order nunc pro tunc correcting the journal entry. The trial court was correct in so amending the record. Crim.R. 36.[8] The fifth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] A "shank" has been described as a homemade knife. Shanks may vary in length.
[2] The indictment charged appellant with a violation of R.C.2903.01, without specifying which division ([A] aggravated murder or [B] felony murder) appellant was charged with violating. Our review of the record and the trial transcript reveals that there was not an underlying felony, as listed in R.C. 2903.01(B), supporting the aggravating murder charge. We therefore find that appellant was charged with aggravated murder and not felony murder.
[3] R.C. 2901.22(A) states:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
[4] The instruction to which Bishop now objects reads:
 An aider and abettor is regarded as if he were a principal offender as though he personally performed every act constituting the offense. If you find the defendant was an aider and abettor, you must find the defendant specifically intended to cause the death of Damico Watkins. An aider and abettor's purpose to kill may be inferred but not conclusively where he engaged in a common design with others to commit an offense by force or violence. Mere presence by the defendant at the scene of the offense is insufficient to establish aiding and abetting. There must have been a common design or plan to commit an aggravated murder and some act in furtherance of the design or plan by defendant before he becomes an aider and abettor.
 You may find the defendant guilty of aggravated murder whether he participated as a principal or aider and abettor if he specifically intended to kill and you are satisfied beyond a reasonable doubt of his guilt. It is not necessary in this context that he inflicted the fatal stab wound or wounds. If you find that the State produced evidence which convinces you beyond a reasonable doubt of each and every element of aggravated murder whether you find the defendant guilty as a principal or aider and abettor, return a verdict of guilty to the charge of aggravated murder. If you so find you must consider the specification.
* * *
 The offense of murder is distinguished from aggravated murder by the failure of the State to prove the existence of prior calculation and design. To find the defendant guilty of murder, you must find that on or about April 25, 1996, and in Madison County, Ohio, the defendant Jerry W. Bishop purposely as a principal offender or as an aider and abettor caused the death of Damico Watkins.
[5] R.C. 2903.01(E), in pertinent part, sets forth the statutory requirements of jury instructions on aggravated murder:
 No person shall be convicted of aggravated murder unless the person is specifically found to have intended to cause the death of another * * *. In no case shall the jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because the person engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death * * *, to have intended to cause the death of another person who is killed * * * during the commission of * * * the offense. If a jury in a aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because the offender engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death * * *, to have intended the death of any person who is killed * * * during the commission of the offense, the jury shall also be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all the evidence introduced by the prosecution to indicate the person's intent and by the person to indicate the person's lack of intent in determining whether the person specifically intended to cause the death of the person killed * * *, and that the prosecution must prove the specific intent of the person to have caused the death * * * by proof beyond a reasonable doubt.
[6] Crim.R. 52(A) states:
 Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
[7] Crim.R. 52(B) states:
 Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
[8] Crim.R. 36 provides:
 Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time.