OPINION
Defendant-appellant, Lesetta Morton, appeals her conviction rendered in the Lebanon Municipal Court for driving under the influence of alcohol, R.C. 4511.19(A)(3)[1] following the denial of her motion to suppress. We affirm the decision of the trial court.
On January 1, 1998, at approximately 12:48 a.m., Ohio State Trooper Michael Williams observed appellant operating her vehicle with no headlights on traveling southbound on Interstate 75 north of State Route 63. Williams initiated a traffic stop and observed that appellant had a strong odor of alcohol, bloodshot eyes and slightly slurred speech. Appellant performed poorly on three field sobriety tests and was placed under arrest for DUI.
At the Hamilton highway patrol post, appellant agreed to submit to a BAC Datamaster breath test. Williams administered the test and appellant tested .180 of one gram of alcohol per two hundred ten liters of breath, clearly over Ohio's legal limit. Appellant filed a motion to suppress the results of her breath test. Appellant alleged that the test was not taken in accordance with the time limitations of R.C. 4511.19(D) and that it generally was not conducted in accordance with Ohio Department of Health Regulations. Appellant also specifically alleged that the breath testing instrument was not properly checked for radio frequency interference; that the machine was not in proper working order; and that it was not calibrated in accordance with the applicable regulations.[2]
Williams testified at the hearing on appellant's motion to suppress and brought documents pertaining to the BAC Datamaster machine which had been used to perform her breath test. These documents included the entire log book kept at the Hamilton Highway Patrol Post. Copies from that book of the instrument check forms completed for the BAC Datamaster on December 27, 1997 and January 2, 1998, were introduced into the record. The parties stipulated to the admission of the printout showing the results of appellant's test. Following the hearing, the trial court overruled appellant's motion to suppress, stating in pertinent part that "the state has met its burden of proof in reference to the tests and how they were administered to the defendant." Appellant then pleaded no contest and was convicted and sentenced accordingly. Appellant has raised one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HER MOTION TO SUPPRESS.
Specifically, appellant contends that (1) breath test results were not maintained for three years; (2) the police failed to test the three required bands for radio frequency interference ("RFI"); (3) the state failed to produce evidence that a senior operator performed instrument checks on the breath testing machine; (4) the state failed to prove that the simulator solution (used in testing the calibration of the breath testing machine) was properly refrigerated; (5) the state failed to prove that the simulator solution was properly kept in its container; (6) the state failed to prove that a manual from the manufacturer of the breath testing machine was on file in the area where breath tests are conducted; and (7) the combination of the above errors.
When deciding a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20. A ruling by the trial court will not be disturbed on appeal if it is supported by substantial and credible evidence. State v. Williams (1993), 86 Ohio App.3d 37,41. The court of appeals will independently determine if the minimum constitutional standards are met. Id.
In all of her contentions, appellant argues that the state failed to demonstrate compliance with the applicable Ohio Department of Health ("ODH") regulations. R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible.State v. Plummer (1986), 22 Ohio St.3d 292, 294. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. Id. In determining whether the state substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Williams
(1992), 82 Ohio App.3d 39.
We further note that although independent analysis has shown that appellant's challenges did not merit suppression of her breath testing results, some of those challenges, especially her first and final challenge, may also have been waived pursuant to the law espoused in Xenia v. Wallace (1988), 37 Ohio St.3d 216.
In Wallace, the Supreme Court noted that Crim.R. 47 provides that a motion for a court order "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." The court stated that the reason for requiring specificity is that the prosecutor cannot be expected to anticipate the defendant's specific legal and factual grounds.
 The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. * * * Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of the issue on appeal.
Id. at 218 (citations omitted).
In State v. Clark (Mar. 19, 1998), Logan App. No. 8-97-14, unreported, the Third District Court of appeals held that a defend ant had waived his challenge to a RFI survey on the basis that only one radio was used during the test. This claim had been waived because the motion to suppress had challenged the survey "solely on the claim that the officer failed to test the correct frequency bands when performing the * * * survey." Id. at 3.
Here, although appellant arguably raised claims concerning RFI frequency checks, calibration and calibration solution, and senior operator's licensing in her motion to suppress, there was no specific challenge to the Hamilton Highway Patrol Post's record keeping or its filing of the breathalyzer manufacturer's manual, such as are presented in appellant's first and sixth listed challenges. Nevertheless, we will address each argument raised.
In her first challenge, appellant argues that Williams could not testify as to how long results of the calibration tests for the breathalyzer had been maintained. Ohio Adm. Code 3701-53-04(E) states:
 Results of instrument checks and records of maintenance and repairs shall be retained, in accordance with paragraph (A) of Rule 3701-53-01
of the Administrative Code.
Ohio Adm. Code 3701-53-01(A) requires that results "of the tests shall be retained for not less than three years." At the motion to suppress hearing, Officer Williams testified that maintenance and repair records on the BAC Datamaster are kept "for the life of the BAC Datamaster." He acknowledged that he did not know specifically how long that had been. Williams had brought the original log book kept at the Hamilton Highway Patrol Post to the hearing. Appellant objected that Williams was not "the calibration officer nor the keeper of the records." The trial court overruled this objection, stating that appellant could cross-examine the officer on those points.
In State v. Gerrard (July 27, 1998), Warren App. No. 97-10-107, unreported, this court held that "breathalyzer calibration or maintenance records more than two years are not integral to evaluating the veracity of the breathalyzer result." In Gerrard, the defendant had access to two complete years of retained records to evaluate the operation of the breathalyzer. We distinguished two cases appellant has cited[3] because in those cases the evidence revealed that the state had only kept records of successful calibration checks and not of failed checks. Such incomplete and misleading record keeping demonstrated prejudice. Here, appellant has not raised any claim that the records were similarly misleading. In State v. Williams
(Apr. 7, 1998), Franklin App. No. 97APC09-1141, unreported, the Tenth District Court of Appeals held that substantial compliance was established even though unsuccessful calibration checks were not retained, because they were recorded in a manner which ensured that the record was not substantially misleading or prejudicial. Similarly, here, records for the life of the machine are in substantial compliance with the regulations. Less than strict technical compliance does not require suppression where no prejudice has been shown.
We recognize that the accuracy of a breath analysis test result is a critical issue in determining the guilt or innocence of a defendant charged with a violation of R.C. 4511.19(A)(3), a strict liability offense. See, e.g., State v. Massie (Apr. 11, 1994), Butler App. No. 93-07-018, unreported. The admissibility of such breath test results depends on whether the police agency "substantially complied" with Ohio Department of Health regulations in maintaining the testing equipment and conductingthe test." See Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3-4
(emphasis supplied). Record-keeping regarding maintenance and repairs are also important so that defendants may conduct complete and relevant discovery concerning the instrument which was used to conduct their test. However, rigid compliance with the three-year specification in the ODH record-keeping regulation is not required where the records them selves are not shown to be misleading, inaccurate, or incomplete. Appellant did not seek to review the records in discovery prior to the hearing on the motion to suppress. Williams testified that records were maintained for the life of the machine.
Without prejudice, appellant's claim fails. It is difficult to imagine how appellant could have been prejudiced. In State v.Knoll (Aug. 5, 1998), Medina App. No. 2771-M, unreported, for instance, the evidence established that the BAC Datamaster was "functioning within a legally acceptable range at the time of Knoll's breath test." The court found that fact was "not altered by a mistake in the transcription of the bottle number of the solution used to test the machine." Therefore, despite a minor procedural irregularity, there was substantial compliance with the requirements set forth in the Ohio Administrative Code regarding the testing for the BAC Datamaster at issue.
Similarly, the evidence here showed that the BAC Datamaster was functioning properly at the time of appellant's test. The evidence also showed that the instrument had been tested and found to be working properly within the regulatory time frame before and after appellant's test. These crucial facts are not affected by a failure to affirmatively establish that records have been kept for three years. In the absence of any indication of misleading or altered records, records for the life of the machine are in substantial compliance with the regulations. See State v.Plummer (1986), 22 Ohio St.3d 292, 294. Therefore, appellant's first challenge does not merit suppression.
In her second challenge, appellant argues that the state did not prove that a radio frequency interference (RFI) survey was properly performed on all three bands. In State v. Gaebel (1997),122 Ohio App.3d 688, this court reaffirmed previous holdings man dating compliance with Department of Health regulations concerning RFI surveys. Former Ohio Adm. Code 3701-53-02(C) required that an RFI survey on a BAC Datamaster be "performed in accordance with the instruction on the form set forth in Appendix H." Appendix H to that regulation, which was in effect until July 7, 1997, required that "if radios are capable of multiple band transmission, each band is to be tested." Suppression of breath tests where such multiple band testing was not conducted was therefore upheld in Gaebel.
However, effective July 7, 1997, Ohio Adm. Code 3701-53-02(A) provides that four listed instruments are "approved as evidential breath testing instruments." The four instruments are the intoxilyzer model number 5000; the Alco Sensor RPBT IOII; the BAC verifier; and the BAC Datamaster. Ohio Adm. Code 3701-53-04(A) now provides:
 A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist as set forth in appendices A to D to this rule. The instrument check may be performed any time up to one hundred and ninety hours after the last instrument check.
Appendices A through D are the instrument check forms for the four approved evidential breath testing machines. All of the approved machines contain internal RFI detectors.
The instrument check forms for the BAC Datamaster now require that a test of the internal detector be conducted by transmitting "using handheld radio near instrument, without touching it, until RFI Detector aborts the test." The BAC Datamaster instrument check forms introduced into evidence at appellant's suppression hearing clearly indicate that the RFI check was conducted in compliance with this applicable regulation on December 27, 1997 and again on January 2, 1998. Because the regulations cited inGaebel were superseded by those which became effective on July 7, 1997, the new regulations are controlling. Compliance with these regulations was established. Therefore, appellant's second issue also does not warrant suppression.
In her third challenge, appellant argues that the state did not establish that the instrument checks on the breathalyzer had been conducted by a senior operator. Ohio Adm. Code 3701-53-04(A) provides that a senior operator shall perform the required instrument (previously referred to as calibration) check. Appellant argues that, because the senior operator who performed the instrument checks on the machine used to test appellant's breath did not testify, there was no admissible evidence indicating compliance with this regulation. We disagree. The state introduced evidence in the form of the two instrument check forms completed prior to and after appellant's test. These forms were both signed by a senior operator. The senior operator's permit number was provided as well as the permit's expiration date.
In State v. Ward (1984), 15 Ohio St.3d 355, the Ohio Supreme Court held that intoxilyzer calibration logs are admissible pursuant to R.C. 2317.41 (which provides for the admissibility of official reports) and Evid.R. 803(8). Evid.R. 803(8) provides that reports of public offices or agencies are not excluded by the hear say rule. The court found that a phrase within that rule prohibiting introduction of reports reciting an officer's observations of criminal activities did not prohibit introduction of "records of a routine, intra-police or machine maintenance nature, such as intoxilyzer calibration logs. Such routine records are highly likely to be reliable, and are precisely the type contemplated as admissible by the public records exception to the rule against hearsay." Ward, 15 Ohio St.3d at 358. Therefore, the Supreme Court held that "[c]ertified copies of police logs showing the calibration of breath analysis equipment are admissible against the defendant in a prosecution for a violation of R.C. 4511.19, despite the absence of the calibration officer." Id. at syllabus.
Although the records here were not certified, the originals were brought to court. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. Statev. Sage (1987), 31 Ohio St.3d 173, 180. Because the records were admissible and relevant to the issue of whether the required instrument checks had been performed, it was not necessary for the senior operator to testify.
Appellant cites State v. Brown (Apr. 13, 1992), Butler App. No. 91-07-043, unreported, in support of her related argument that there was no admissible evidence that the instrument checks were indeed performed by an officer who held a valid senior operator's permit. In Brown, the trial court had taken judicial notice of the operator's senior operator status based on a previous case. This court ruled that was unacceptable as the state had failed to establish the necessary foundation. However, in Mason v. Armour
(Mar. 13, 1999), Warren App. No. 98-03-033, unreported, we held that "the key question in such cases is whether [the officer] had the status of senior operator on that date, not whether the state admitted the operator's license." (Citation omitted.) In Armour, the record contained a "verification" of the contested senior operator's status, including his permit number and its expiration date. We found that the record therefore contained evidence of the officer's status as a senior operator, even though it did not contain an actual copy of his permit. Similarly, in State v.Adams (Oct. 17, 1995), Pickaway Co. App. No. 94CA21, unreported, the Fourth District Court of Appeals held that "foundational evidence" establishing senior operator status can be provided by the BAC Datamaster Test Report Forms which are signed by the officers underneath the legend "senior operator signature." See, also, State v. Young (1993), 88 Ohio App.3d 486, 491 (testing officer's signature on the "operator's" signature line [together with permit number and permit expiration date] was a sufficient "minimum foundation" for introducing test results).
The analysis of Armour and Adams is persuasive. Moreover, here there was additional evidence that the officer conducting the crucial pretest calibration held senior operator status as Williams had brought that officer's senior operator permit to the hearing. Therefore, appellant's third challenge to the admission of the breathalyzer results is without merit.
In her fourth and fifth challenges, appellant argues that there was no evidence of compliance with Ohio Adm. Code3701-53-02(C). Although there is no longer any such provision, we will assume that appellant is alleging a lack of compliance with Ohio Adm. Code 3701-53-04(C) which provides:
 Calibration solutions shall be kept under refrigeration after first use, when not being used. The calibration solution container shall be retained for reference until the calibration solution is discarded.
As this court explained in State v. Snider (May 5, 1997), Warren App. No. 96-10-102, unreported:
 Calibration is a process used to determine whether the results produced by a breath testing machine are accurate. A breath testing machine must be calibrated once every seven days. The process involves pumping a calibration solution, with an optimum reading provided by ODH, into the machine. The calibration check is valid when the result produced by the machine is at the optimum value plus or minus five one-thousands (0.005) grams per two hundred ten liters. Pursuant to ODH regulations, calibration solutions must be kept under refrigeration when not being used.
In Snider, the evidence did not "specifically [establish] that the calibration solution was refrigerated when not being used." However, we found that there was evidence that the calibration testing was administered in conformity with ODH regulations so that specific testimony that the solution was refrigerated was not required. In State v. Nagel (1986), 30 Ohio App.3d 80, the Ninth District Court of Appeals also held that it was not necessary to present testimony that the solution was, in fact, refrigerated. See, also, State v. Hicks (Dec. 6, 1991), Erie App. No. E-91-12, unreported (no evidence to show that solution was not properly refrigerated).
Although our research has revealed no cases on failure to affirmatively establish that the solution was kept in the proper container, a similar analysis applies. No prejudice has been shown and appellant's fourth and fifth challenges do not warrant suppression.
In her sixth challenge, appellant claims that the result of her breath test should have been suppressed because there was no evidence establishing compliance with Ohio Adm. Code 3701-53-01(B). This regulation requires that a copy of the operational manual provided by the manufacturer of a breath testing instrument be on file in the area where the test is performed. In State v. Curry
(Sept. 5, 1989), Butler App. No. 89-02-032, unreported, a police officer testified that the manufacturer's operational manual was not present, although an instruction manual issued by the Ohio Department of Health was in the same room with the breath testing instrument at the time of the test. We found that this sufficiently complied with the regulations to render the test admissible. We noted that the defendant had not "alleged or demonstrated any prejudice which accrued to him as a result of the manufacturer's manual being absent from the testing room." Id. at 4. We recently cited Curry in Gerrard, the case concerning the three year records retention requirement. In both cases, i.e., failure to retain records for three years and failure to keep the manufacturer's operational manual with the breathalyzer, the failure of the state to strictly comply with an ODH regulation was not fundamental to the accuracy of the breath testing equipment. Therefore, appellant's sixth challenge to the admissibility of her breath testing result fails.
Finally, appellant has asserted that the cumulative effect of each of the six issues she has presented required suppression. Be cause none of her previous arguments had merit, this challenge also fails. Non-error plus non-error does not equal error. Appellant's sole assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] R.C. 4511.19(A)(3) states that "no person shall operate any vehicle * * * within this state, if any of the following apply: * * * The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath."
[2] Appellant also alleged that the stop and subsequent arrest were unlawful; however, these issues are not raised on appeal.
[3] State v. Hominsky (1995), 107 Ohio App.3d 787; State v.Griffith (Sept. 21, 1988), Summit App. No. 13441, unreported.