[Cite as *State v. Foust*, 2014-Ohio-3198.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | |
| -vs- | |
| | Case No. 2013 CA 00218 |
| DAVID FOUST | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Massillon
                             Municipal Court, Case No.  2013 TRC 3993


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      July 21, 2014


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

ROBERT A. ZEDELL                        JACOB T. WILL
MASSILLON LAW DEPARTMENT                116 Cleveland Avenue NW
Two James Duncan Plaza                  Suite 808
Massillon, Ohio  44646                  Canton, Ohio  44702

*Wise, J.*

{¶1}. Defendant-Appellant David C. Foust appeals the decision of the Massillon Municipal Court, Stark County, which denied his motion to suppress in an OMVI case. Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}. On May 26, 2013, appellant was operating his motor vehicle near the intersection of Interstate 77 and Everhard Road in Jackson Township, Stark County, Ohio. Trooper Johnnie Maier of the Ohio State Highway Patrol was on duty and stopped appellant after seeing him driving erratically. According to the trooper, appellant stated he had been at a bar and had consumed two shots and two beers. Trooper Maier smelled the odor of an alcoholic beverage coming from appellant and noticed that his eyes were glossy. Based on his observations, the trooper proceeded to administer several field sobriety tests. Appellant exhibited six clues on the horizontal gaze nystagmus ("HGN") test, six clues on the walk and turn test, and four clues on the one-leg stand test.

{¶3}. After administering the tests, the trooper concluded he had established probable cause that appellant was operating his vehicle while under the influence of alcohol and/or drugs. Appellant was arrested for that violation and was transported to the State Highway Patrol station. The trooper thereupon administered a breath test on appellant with the BAC Datamaster, producing a result of .183.

{¶4}. On May 28, 2013, appellant was formally charged with one count of Operating a Vehicle Impaired (R.C. 4511.19), a misdemeanor of the first degree, and one count of Driving in Marked Lanes (R.C. 4511.33), a minor misdemeanor.

{¶5}. Appellant thereafter filed a motion to suppress, raising issues of reasonable, articulable suspicion to effectuate a traffic stop, probable cause to arrest, and proper protocol regarding calibration of the BAC Datamaster. On August 23, 2013, the trial court conducted a suppression hearing. Following the hearing, the trial court denied appellant's motion to suppress on all grounds.

{¶6}. On October 3, 2013, appellant pled no contest to one count of OVI and one count of a marked lane violation. Appellant was thereupon sentenced to a six-day DIP program with a license suspension of 180 days, and he was ordered to complete 40 hours of community service .

{¶7}. Appellant filed a notice of appeal on November 4, 2013. He herein raises the following sole Assignment of Error:

{¶8}. "I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS."

I.

{¶9}. In his sole Assignment of Error, appellant argues that the trial court erred in denying his motion to suppress. We disagree.

{¶10}. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate

legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. As the United States Supreme Court held in *Ornelas v. U .S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶11}. R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. *State v. Raleigh,* Licking App.No. 2007-CA-31, 2007-Ohio-5515, ¶ 40. A related section, R.C. 3701.143, states as follows:

{¶12}. "For purposes of sections 1547.11, 4511.19, and 4511.194 of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's whole blood, blood serum or plasma, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, controlled substance, metabolite of a controlled substance, or combination of them in the person's whole blood, blood serum or plasma, urine, breath, or other bodily substance. *The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses.* Such permits shall be subject to termination or revocation at the discretion of the director." (Emphasis added.)

{¶13}. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer* (1986), 22

Ohio St.3d 292, 294, 490 N.E.2d 902. *See, also*, *State v. Morton* (May 10, 1999), Warren App.No. CA98-10-131. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol test results can be admitted in a prosecution under 4511.19. *Id.* In determining whether the State substantially complied with OAC regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *See State v. Williams* (1992), 82 Ohio App.3d 39, 42-43, 610 N.E.2d 1188.

{¶14}. Appellant's technical focus in the present appeal is centered on the duty of law enforcement officials to maintain breath testing equipment and the records of such equipment, in this instance the BAC Datamaster. We first note that OAC 3701-53-04(A) states as follows:

{¶15}. "A senior operator shall perform an instrument check on approved evidential breath testing instruments * * * no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check. ***."

{¶16}. Furthermore, as is well articulated in appellant's brief, an approved solution of ethyl alcohol shall be used to check the validity of the instrument and the results should be within five one-thousandths (.005) grams per two hundred ten liters of the target value established for the solution. *See* OAC 3701-53-04(A)(2). If an instrument check results in a test result outside of the allowable range of the target value, the senior operator is instructed to obtain a new bottle of approved test solution and to conduct the test again. *Id.* If the second test result is outside the allowable range

of the target value of the new bottle, the BAC Datamaster is to be removed from service. *Id.*

**{¶17}.** Finally, under OAC 3701-53-04(G), "[r]esults of instrument checks, controls, certifications, calibration checks and records of service and repairs shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code."

**{¶18}.** It appears undisputed in the case sub judice that during an earlier calibration test on the BAC Datamaster on April 1, 2013, a new solution bottle had been put into use, even though the prior solution bottle had not yet expired. Although Trooper Maier, who was called to testify at the suppression hearing, is qualified as a senior operator, he had no first-hand knowledge of the weekly calibration checks from early March to early April 2013 or why the solution bottle had been switched out. *See* Tr. at 15-17.

**{¶19}.** However, while the scenario presented in this case does create some cause for speculation as to the reason for the apparently premature change of the solution bottle, no other significant challenges regarding the calibration process are evident herein, and we are unpersuaded that the discrepancy at issue warrants a finding that the State Highway Patrol failed to maintain substantial compliance with its record-retention duties under OAC 3701-53-04(G) or that appellant was prejudiced thereby.

**{¶20}.** We therefore hold the motion to suppress was properly denied on this issue. Accordingly, appellant's sole Assignment of Error is overruled.

{¶21}. For the foregoing reasons, the judgment of the Massillon Municipal Court, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Farmer, P. J., and

Baldwin, J., concur.