OPINION *Page 2 
{¶ 1} Defendant-appellant Markane B. Raleigh appeals his convictions and sentences in the Licking County Municipal Court on one count of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19 (A) (1) and one count of failure to dim headlights in violation of Ohio Revised Code Section 4513.15(A). The appellee is the State of Ohio. The following facts give rise to this appeal.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 29, 2006, appellant was arrested and charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and failure to dim headlights in violation of R.C. 4513.15, a minor misdemeanor.
 {¶ 3} On October 17, 2006, appellant filed a Motion to Suppress arguing, in part, that there was no lawful cause to stop appellant and/or probable cause to arrest him. A hearing on appellant's motion was held on January 16, 2007.
 {¶ 4} At the suppression hearing, Trooper Sean Eitel of the Ohio State Highway Patrol testified that he observed appellant operating a vehicle in Licking County, Ohio on Mink Street and U.S. Route 40 at approximately 2:45 a.m. on September 29, 2006. Trooper Eitel testified that he observed the appellant fail to dim his high beams as the patrol vehicle passed by the appellant's vehicle in the opposite direction. The trooper then turned his vehicle around and caught up with the appellant. The trooper observed the appellant operating his vehicle on U.S. Route 40. The trooper testified that he observed appellant's vehicle traversing over the right fog line and changing lanes without signaling. The officer turned on his overhead and takedown lights at which time *Page 3 
the appellant crossed over to the opposite direction lanes and into a private driveway. The driveway was the property of the passenger in the appellant's vehicle.
 {¶ 5} The trooper, upon initial contact with the appellant, noticed a strong odor of an alcoholic beverage coming from the vehicle. The appellant also exhibited bloodshot eyes and was slow and deliberate in his movements. He admitted to consuming some alcohol. The appellant was then asked to perform the standardized field sobriety tests. The trooper testified he performed these tests in accordance with his training and the NHTSA manual, 2000 edition, upon which his training was based. The appellant failed all three tests. The appellant also submitted to a portable breath test.
 {¶ 6} The appellant was placed under arrest and transported to the Licking County Sheriffs Department for breath testing. A breath test yielded a blood alcohol content of .141%.
 {¶ 7} Pursuant to a Judgment Entry filed on January 19, 2007, the trial court overruled appellant's Motion to Suppress. On February 5, 2007 appellant entered pleas of No Contest to the OVI charge and the failure to dim headlights charge.
 {¶ 8} As memorialized in a Judgment Entry filed on April 11, 2007, the trial court ordered appellant to serve 30 days in jail, with all but four (4) days suspended, and to pay a $300.00 fine and court costs. The trial court also ordered appellant to serve seventy-two (72) hours at the Driver's Intervention Program and suspended appellant's driver's license.
 {¶ 9} Appellant now raises the following assignments of error on appeal: *Page 4 
 {¶ 10} "I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DUE TO THE NONEXISTENCE OF REASONABLE SUSPICION TO STOP THE DEFENDANT.
 {¶ 11} "II. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT [sic] MOTION TO SUPPRESS EVIDENCE DUE TO THE LACK OF PROBABLE CAUSE TO ARREST THE DEFENDANT.
 {¶ 12} "III. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE CONCERNING THE FIELD SOBRIETY TESTS AT TRIAL.
 {¶ 13} "IV. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION REQUESTING THAT THE RESULTS OF THE BAC TEST BE SUPPRESSED DUE TO LACK OF SUBSTANTIAL COMPLIANCE WITH OHIO DEPARTMENT OF HEALTH RULES AND REGULATIONS."
 Standard of Review {¶ 14} Initially, we note that there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, overruled on other grounds. Finally, *Page 5 
assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, and State v. Guysinger (1993),86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 699," . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 15} In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing his assignments of error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 16} It is based upon this standard that we review appellants' assignments of error.
 I. {¶ 17} In his first assignment of error appellant argues that the traffic stop leading to his arrest was not based upon reasonable suspicion that he had committed a traffic violation. We disagree.
 {¶ 18} When a police officer stops a motor vehicle for a traffic violation, the stop itself constitutes a `seizure' within the meaning of both the Fourth Amendment of the United States Constitution.Berkemer v. McCarty (1984), 468 U.S. 420, 436-37, *Page 6 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332-333; and Section 14, Article I, of the Ohio Constitution; see Dayton v. Erickson (1996), 76 Ohio St.3d 3,11, 665 N.E.2d 1091. The temporary detention involved in a traffic stop, however, is not considered "custody" triggering the Miranda protections of Fifth Amendment rights. Berkemer, 468 U.S. at 440. It is, instead, more akin to a "Terry stop," during which a police officer may briefly detain a person and conduct an investigation upon a reasonable suspicion of criminal activity. Id. at 439 (citing Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).
 {¶ 19} An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988), 488 U.S. 910, 109 S.Ct. 264.
 {¶ 20} When police observe a traffic offense being committed, the initiation of a traffic stop does not violate Fourth Amendment guarantees, even if the stop was pretextual or the offense so minor that no reasonable officer would issue a citation for it. Whren v.United States (1996), 517 U.S. 806, 116 S.Ct. 1769, 1774-75.
 {¶ 21} In Pennsylvania v. Mimms (1977), 434 U.S. 106, 111,98 S.Ct. 330, 333, 54 L.Ed. 331, 337, the Supreme Court held that an officer who lawfully detained a vehicle for a traffic offense could order the driver out of the vehicle, even if the officer *Page 7 
had no reasonable suspicion of danger to justify the order. The court held that the additional intrusion upon personal liberty caused by such an order was de minimis and any inconvenience to the driver was outweighed by concerns for the safety of police officers. Id. at 111.
 {¶ 22} Appellant was initially stopped for failing to dim his bright lights. R.C. § 4513.15(A) provides:
 {¶ 23} "Whenever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver".
 {¶ 24} In this case, the trooper's testimony that appellant drove past the oncoming police cruiser without deactivating his high-beam headlights is sufficient in justifying the initial stop of appellant. The appellant argues that a driver sufficiently complies with the headlight statute if he ultimately turns off the high beams after passing a vehicle headed in the opposite direction. We disagree. Rather, a driver violates the statute by continuing to use the high beam headlights of his vehicle "upon approaching" such traffic. The statute requires the driver to shift to the low beam lights at the latest when the glaring rays project into the eyes of an oncoming driver.
 {¶ 25} In the case at bar, Trooper Eitel testified that as appellant's vehicle approached and passed the trooper's cruiser he could tell the vehicle's high beams were on because "[h]e had an older vehicle, so it had two sets of headlights. The inside lights were on, as well, and the fact that I couldn't see the roadway." (T. at 9). Accordingly, the specific and articulable facts as explained by the arresting officer justified the investigatory traffic stop of appellant's vehicle.Westlake v. Kaplysh (1997), *Page 8 118 Ohio St.3d 18, 20, 691 N.E.2d 1074, 1076; State v. Rankin (Sept. 20, 1993), 5th Dist. No. 92-CA-20.
 {¶ 26} Appellant's first assignment of error is overruled.
 II. III. {¶ 27} Appellant argues in his second assignment of error that the trial court erred in overruling his Motion to Suppress because Trooper Eitel did not have probable cause to arrest him for driving under the influence of alcohol. In his third assignment of error appellant argues the trial court erred when it denied his motion to suppress evidence of the field sobriety tests at trial. We disagree.
 {¶ 28} The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan (2000), 89 Ohio St.3d 421, 427,732 N.E.2d 952; Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. State v. Van Fossen
(1984), 19 Ohio App.3d 281, 484 N.E.2d 191. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See State v. Miller (1997),117 Ohio App.3d 750, 761, 691 N.E.2d 703; State v. Brandenburg (1987),41 Ohio App.3d 109, 111, 534 N.E.2d 906.
 {¶ 29} Furthermore, when evaluating probable cause to arrest for OVI, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest *Page 9 
even where no field sobriety tests were administered." Homan, supra,89 Ohio St.3d at 427, 732 N.E.2d 952. The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. Oregon v. Szakovits (1972),32 Ohio St.2d 271, 291 N.E.2d 742; Fairfield v. Regner (1985),23 Ohio App.3d 79, 84, 491 N.E.2d 333; State v. Bernard (1985),20 Ohio App.3d 375, 376, 485 N.E.2d 783; Westlake v. Vilfroy (1983), 11 Ohio App.3d 26,27, 462 N.E.2d 1241.
 {¶ 30} The field sobriety tests described in the National Highway Traffic and Safety Administration ["NHTSA'] Manual are "reliable, credible, and generally accepted" as memorialized in R.C.4511.19(D)(4)(b), stating the results of the field sobriety tests may be admitted "if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the National Highway Traffic Safety Administration." The Ohio Supreme Court has interpreted this statute: "[t]he General Assembly has determined that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard. The potential compromise of *Page 10 
reliability caused by the lack of strict compliance can be shown by the defense on cross-examination". State v. Boczar, 113 Ohio St.3d 148,2007-Ohio-1251 at ¶ 23.
 {¶ 31} Appellant initially complains that (1) no evidence was presented that the field sobriety tests utilized were reliable, credible, and generally accepted, and (2) that there was no evidence that the standards utilized were in effect at the time of the stop. In regards to the issues of reliability, credibility, and general acceptance, R.C. 4511.19(D) (4)(b) deals with that issue in its text by explicitly including field sobriety tests administered pursuant to NHTSA standards as meeting those qualifications. State v. Boczar, supra.
 {¶ 32} Appellant next complains that the Trooper did not utilize the most current version of the NHTSA manual when administering the tests to appellant. Unfortunately, appellant did not include a copy of the 2006 manual in evidence at the trial court level. Further, appellant has utterly failed to explain how the procedures have changed and, more importantly, how any alleged changes in the administration of the procedures have prejudiced the appellant.
 {¶ 33} Trooper Eitel testified that he received his initial training pursuant to the NHTSA standards in the year 2000 pursuant to the 2000 edition of the NHTSA manual. (T. at 6). He also testified that the standards for administering the field sobriety tests have not changed dramatically since his training. (Id.). There was no evidence that the standards for any specific portions of the field sobriety tests administered had changed at all between the time of the trooper's training and the time of the encounter in this case. This Court will not presume prejudice. *Page 11 
 {¶ 34} Appellant next argues that Trooper Eitel did not administer the Field Sobriety Tests in substantial compliance with the NHTSA standards. He claims that Trooper Eitel failed to give necessary instructions, failed to demonstrate the Walk and Turn and the One Leg Stand tests, and failed to administer the HGN properly. Other than the alleged failure to demonstrate the tests and an unspecific claim that the trooper failed to give instructions, appellant points to no specific failures to meet even strict compliance in this matter.
 {¶ 35} Trooper Eitel testified as to his administration of the HGN test [T. at 14-20]; the One-leg stand [T. at 20-23]; the Walk-and-turn [T. at 23-25]; the portable breath tester and the ABC's tests. [T. at 25-27]. The trooper gave the required instructions and demonstrations prior to each test. The trooper testified that each test was given in compliance with the NHTSA standards. Further, the administration of the tests was recorded on the cruiser's video tape camera.
 {¶ 36} The trooper notice six clues on the HGN test [T. at 19-20]; appellant put his foot down three times and swayed during the one-leg stand test [T. at 22]; and the trooper recorded three clues during the walk-and-turn test. [T. at 25]. Trooper Eitel testified that he could smell a strong order of an alcoholic beverage coming from inside appellant's vehicle. (T. at 12). Upon inquiry from the trooper, appellant admitted that "he'd had a few." (Id. at 13). The trooper was able to observe appellant's bloodshot eyes and characterized appellant's movements as "slow and deliberate." (Id.). After asking appellant to exit the vehicle the trooper could detect the odor of an alcoholic beverage on appellant's breath. (Id. at 14). *Page 12 
 {¶ 37} Upon our review of the record, we find that Trooper Eitel had probable cause to arrest appellant for driving under the influence of alcohol.
 {¶ 38} Appellant's second and third assignments of error are overruled.
 IV. {¶ 39} In his fourth assignment of error appellant contends that the trial court erred when it denied his motion requesting that the results of the breath test be suppressed due to lack of substantial compliance with the Ohio Department of Health rules and regulations.
 {¶ 40} R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. State v.Plummer (1986), 22 Ohio St.3d 292, 294, 490 N.E.2d 902; State v.Morton (May 10, 1999), 12th Dist. No. CA98-10-131. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. Id. In determining whether the State substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Williams (1992), 82 Ohio App.3d 39,610 N.E.2d 1188.
 {¶ 41} The appellant first argues that Trooper Eitel was not qualified to administer a breath alcohol test to appellant. The State admits that it inadvertently admitted a *Page 13 
senior operator permit for Trooper Eitel that had expired on June 15, 2006 during the hearing on appellant's motion to suppress.
 {¶ 42} In Mason v. Armour (Mar. 13, 1999), Warren App. No. 98-03-033, the Twelfth District Court of Appeals held that "the key question in such cases is whether [the officer] had the status of senior operator on that date, not whether the state admitted the operator's license." (Citation omitted.) In Armour, the record contained a "verification" of the contested senior operator's status, including his permit number and its expiration date. The Court found that the record therefore contained evidence of the officer's status as a senior operator, even though it did not contain an actual copy of his permit.
 {¶ 43} In State v. Adams (Oct. 17, 1995), Pickaway Co. No. 94CA21, the Fourth District Court of Appeals held that "foundational evidence" establishing senior operator status can be provided by the BAC Datamaster Test Report Forms which are signed by the officers underneath the legend "senior operator signature." See, also, State v. Young
(1993), 88 Ohio App.3d 486, 491, 624 N.E.2d 314 (testing officer's signature on the "operator's" signature line [together with permit number and permit expiration date] was a sufficient "minimum foundation" for introducing test results). State v. Morton (May 10, 1999), 12th Dist. No. CA98-10-131.
 {¶ 44} In the case at bar, the state introduced evidence in the form of the subject test check form completed for the appellant's test. This form was signed by Trooper Eitel as a senior operator. Trooper Eitel's senior operator's permit number was provided as well as the permit's expiration date. The expiration date on that form indicates Trooper Eitel had a valid senior operator's permit through June 15, 2007. The permit *Page 14 
number on the checklist correlates to the permit number inadvertently admitted into evidence during the suppression hearing. That permit was issued June 15, 2005 with an expiration date of June 15, 2006.
 {¶ 45} We find that the record contains evidence of Trooper Eitel's status as senior operator on the date in question even though it does not contain the actual copy of his permit in effect on that date.State v. Hartman, 5th Dist, No. 2006-CA-C090059,2007-Ohio-3051.
 {¶ 46} Appellant next contends that Trooper Eitel did not observe the appellant for the required 20 minutes prior to conducting the breath-alcohol testing.
 {¶ 47} "R.C. 4511.19(D) states that any bodily substance collected for the purpose of determining whether a person is in violation of the statute `shall be analyzed in accordance with the methods approved by the director of health * * *.' Regulations promulgated by the Director of Health in Ohio Adm. Code 3701-53-02(B) state in pertinent part that `[b]reath samples shall be analyzed according to the operational checklist for the instrument being used.' Thus, the operational checklist, which is part of the BAC Verifier Test Report Form (see Appendix A), provides the `methods approved by the director of health' for the operation of the BAC Verifier.
 {¶ 48} "The first item on the operational checklist, which is part of the BAC Verifier Test Report Form, states `Observe subject for twenty minutes prior to testing to prevent oral intake of any material."Bolivar v. Dick, 76 Ohio St.3d 216, 218, 667 N.E.2d 18, 1996-Ohio-409. The Health regulations require that a test subject not ingest anything for 20 minutes prior to submitting to a Breathalyzer test. See Ohio Adm. Code 3701-53-02. *Page 15 
 {¶ 49} This Court in State v. Karns (July 21, 1998) Fairfield App. No. 97CA0002, previously held that the substantial compliance standard is not applicable to the instant situation. In Karns, we held that the regulation is a bright line rule — either the subject did or did not have something in his mouth during the twenty (20) minute observation period. In that case we held that because appellant had the chewing gum in her mouth during the twenty (20) minute observation period, there had not been compliance with the regulation. Therefore, appellant was not required to show prejudice before the results were inadmissible. InKarns, we held that the determination that such case scenario does not yield itself to a substantial compliance test is buttressed by the fact that the language of the regulation itself prohibits the intake of any material, not just material which may contain alcohol or otherwise may affect the test results. Our holding comports with our previous decision in State v. Kirkpatrick (June 1, 1988), Fairfield App. No. 43-CA-87, in which we concluded "that the twenty-minute observation period is mandatory and that there be no oral ingestion of any material during that observation period." Id. at 8. Accord State v. Baldridge, 5th Dist. No. 01-COA-01412, 2001-Ohio-7029.
 {¶ 50} In Steele, the Ohio Supreme Court explained the reason for the twenty-minute observational period before testing. It explained that the observational period is used to eliminate the possibility that the test result is a product of anything other than the suspect's deep lung breath. Id. at 190, 370 N.E.2d 740. It explained that since the "accuracy of the test results can be adversely affected if the suspect either ingests material internally, by belching or vomiting, the suspect must be observed" for twenty minutes to verify that no external or internal material causes a false reading. State v. *Page 16 Douglas, 1st Dist. No. C-030897, 2004-Ohio-5726, at ¶ 9, citingSteele, 52 Ohio St.2d at 190, 370 N.E.2d 740; State v. Camden, 7th Dist. No. 04 MO 12, 2005-Ohio-2718 at ¶ 15. InSteele, the court reasoned that once the trooper demonstrated it was highly improbable that the subject ingested any item during the twenty-minute period, it was up to the defendant to "overcome that inference" with proof that she had ingested some substance. Moreover, ingestion has to be more than just "hypothetically possible."Steele, supra at 192, 370 N.E.2d 740; see, accord, State v.Faykosh, 6th Dist. No. L-01-1244, 2002-Ohio-6241; State v. Embry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324 at ¶ 25;State v. Rennick, 7th Dist. No. 02 BA 19, 2003-Ohio-2560 at ¶ 25; State v. S/ege/(2000), 138 Ohio App.3d 562, 568-569,741 N.E.2d 938, 942-943.
 {¶ 51} In the case at bar, Trooper Eitel testified that he observed the appellant for at least 20 minutes prior to administering the breath test. (T. at 31; 52). During much of that time appellant was seated in the cruiser with his hands handcuffed behind his back. (Id. at 52-53). Appellant introduced nothing to suggest that he did, in fact, ingest some material during the twenty-minute period. A mere assertion that ingestion during the 20 minute period was hypothetically possible, without more, did not render the test results inadmissible.
 {¶ 52} Appellant next argues that Deputy Doelker was not qualified to "calibrate" the breath testing device used in appellant's case. Appellant's argument is nonsensical.
 {¶ 53} Pursuant to Ohio Adm. Code 3701-53-04(A) and 3701-53-07, a senior operator must perform an instrument check on the breathalyzer equipment no less frequently than once every seven days. The record clearly demonstrates that Deputy *Page 17 
Doelker performed the weekly instrument checks, as opposed to "calibration," that he was properly qualified to perform.
 {¶ 54} Appellant next argues that the State was required to demonstrate that BAC Datamaster manufacturer's manual was complied with in order to render the test results admissible at trial.
 {¶ 55} In State v. Schlegel, 5th Dist. No. 2003 CA 00382, 2004-Ohio-2535 this Court held that "[b]efore the results of a breathalyzer test may be admitted into evidence, the State must show (1) the instrument was in proper working order; (2) its operator had the proper qualifications to conduct the test; and (3) the test was conducted in substantial compliance with the Ohio Department of Health regulations. See: Cincinnati v. Sand (1975), 43 Ohio St.2d 79,330 N.E.2d 908; Newark v. Lucas (1988), 40 Ohio St.3d 100, 532 N.E.2d 130. When a motion to suppress is predicated on non-compliance with Department of Health regulations, the burden is on the State to prove compliance with said regulations. See: State v. Crowder and Wright (Nov. 30, 1995), Morgan App. Nos. CA-95-14 and CA-95-15, unreported.
 {¶ 56} "The Ohio Supreme Court, in State v. Plummer (1986),22 Ohio St.3d 292, 490 N.E.2d 902, syllabus, held that absent a showing of prejudice to a defendant, the results of an alcohol test administered in "substantial compliance" with the Ohio Department of Health regulations governing alcohol testing are admissible in evidence for prosecution of a case under R.C. 4511.19. The Ohio Supreme Court has consistently held that substantial compliance with pertinent regulations resolves the issue of the admissibility of the BAC test result. Defiance v.Kretz (1991), 60 Ohio St.3d 1, 573 N.E.2d 32; Plummer, supra; State v.Dickerson (1986), 25 Ohio St.3d 64, *Page 18 495 N.E.2d 6; State v. Steele (1977), 52 Ohio St.2d 187, 370 N.E.2d 740".Schlegel, supra at ¶ 17-18.
 {¶ 57} Ohio Adm. Code 3701-53-02 lists the approved devices that may be used to determine a person's blood alcohol level through breath testing. One of the listed devices is the BAC Datamaster. Ohio Adm. Code3701-53-02(A) (1).
 {¶ 58} Ohio Adm. Code 3701-53-02(C) states that breath samples taken for the purpose of determining a person's blood alcohol level "shall be analyzed according to the operational checklist for the instrument being used." Nowhere do the regulations require compliance with the manufacture's manual as a prerequisite to admissible of the test results.
 {¶ 59} Looking at the operational checklist in question, it is clear that it was filled out by Trooper Eitel in connection with appellant's BAC Datamaster test. It contains the date of the infraction, appellant's name, social security number, address, and driver's licensee number. It also contains Trooper Eitel's name, signature, and senior operator permit number. Further, it references OAC 3701-53-02, the statute requiring an operational checklist.
 {¶ 60} Accordingly, we find that the operational checklist is competent and credible evidence that the state substantially complied with Ohio Adm. Code 3701-53-02(C). Appellant introduced nothing beyond vague supposition; appellant did not show that he suffered any prejudice as a result of the functioning of the BAC Datamaster during his test. *Page 19 
 {¶ 61} Appellant finally contends that the State failed to establish substantial compliance with the Ohio Administrative Code regulations governing radio frequency interference checks.
 {¶ 62} OAC Section 3701-53-04(A) (1) provides:
 {¶ 63} "(A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
 {¶ 64} "(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath-testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 65} In State v. Pumphrey, 5th Dist. No. 2006CA00054, 2007-Ohio-251
this Court held that "the OAC Regulation specifically requires the instrument to be checked to detect RFI using a hand-held radio `normally used by the law enforcement agency'. In the absence of evidence demonstrating this specific requirement of the regulation has been met, we find the trial court did not err in finding appellant had not substantially complied with same". In Pumphrey the State introduced only the instrument checklist.
 {¶ 66} In the case at bar, the State, in addition to presenting the "Instrument Checklist," including the instruction, "when instrument displays "PLEASE BLOW," *Page 20 
transmit using hand-held radio near the instrument without touching it, until RFI detector aborts the test," the State presented the testimony of Trooper Eitel concerning his performance of the RFI check: "As soon as it asks you whether the subject refuses or not. If you put `no', the machine initiates the BAC test and then you key up your radio and it will print out a ticket for you telling you that RFI . . ." [T. at 62]. The following exchange additionally occurred:
 {¶ 67} "Q. Okay, during RFI check, was it able to detect RFI?
 {¶ 68} "A. It was.
 {¶ 69} "Q. Okay, and based on its detection, what did it do?
 {¶ 70} "A. It gave me an RFI radio interference and it stopped the test.
 {¶ 71} "Q. Okay, and that's what it's supposed to do, is that correct?
 {¶ 72} "A. Yes."
 {¶ 73} [T. at 64].
 {¶ 74} Once the state has produced enough evidence at the hearing on a motion to suppress to create a reasonable inference that the regulation at issue was properly followed, the accused must do more than merely assert that it is hypothetically possible some more specific aspect of the regulation was not followed. The accused must have a factual basis for the assertion. State v. Embry supra 2004-Ohio-2535 at ¶ 26. One way this factual basis can be obtained is during cross-examination at the hearing on the motion. [Id.]. A defendant who files a boilerplate motion with a bare minimum factual basis will need to engage in cross-examination if he wishes to require the state to respond more than generally to the issues raised in the motion. [Id. at ¶ 27]. InState v. Neuhoff (1997), 119 Ohio App.3d 501, 506, 695 N.E.2d 825, this Court held that in *Page 21 
order to put the state on notice of the issues to be challenged at a hearing with sufficient particularity, a defendant must first complete due and diligent discovery on those issues.
 {¶ 75} Appellant introduced nothing at the hearing on his motion to suppress to suggest that an improper RFI test was done in appellant's case.
 {¶ 76} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 77} The judgment of the Licking County Municipal Court is affirmed.
Gwin, P.J., and Delaney, J., concur; Hoffman, J., concurs separately
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court is affirmed. Costs to appellant.