OPINION *Page 2 
{¶ 1} Appellant, Mei Wang, appeals from the July 20, 2007 judgment of the Delaware County Municipal Court, overruling her motion to suppress evidence. Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was arrested for OVI and transported to the Delaware Ohio State Highway Patrol Post. There she submitted to a breath test, with a result of .112. Appellant was charged in the Delaware County Municipal Court with an OVI, (R.C. 4511.19(A) (1) (a)), an OVI per se, (R.C. 4511.19(A) (1) (b)), and Failure to Obey Traffic Control Devices, (R.C. 4511.12).
 {¶ 3} Appellant filed a motion to suppress. At the hearing, the State called Trooper Glascox who administered the breath test, but who did not perform the calibration checks before and after the test. Trooper Schemine (often referred to in the transcript incorrectly, as "Trooper Shony") performed those calibration checks.
 {¶ 4} The local method of performing the pre-and post breath calibration checks is the same as the statewide method, using the forms provided by the Department of Health, with one addition. Locally, the calibration officer fills out, pursuant to local requirements, a form titled "BAC DATAMASTER STATEMENT REGARDING CALIBRATION CHECK DATED." (T. at 69-70). While the form is not one provided by the Department of Health, it is one required to be used locally and which the local Troopers are instructed to use by local Highway Patrol personnel. (T. at 59). The form memorializes the steps taken, methods followed, and equipment used by the calibration officer. The form contains ten blanks concerning the date of the calibration, the date of *Page 3 
the expiration and manufacturing of the solution used, as well as the hand-held radio used for RFI checks. Six preprinted statements within the document set forth that the operator complied with enumerated regulations of the Ohio Department of Health.
 {¶ 5} The trial court concluded that this addendum prepared by the calibrating officer was a business record and not testimonial underCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177, and its progeny.
 {¶ 6} The State dismissed the charge of OVI, and Appellant pled guilty to Failure to Obey Traffic Control Devices and No Contest to the remaining OVI per se charge. The trial court accepted the pleas and found Appellant guilty of OVI per se.
 {¶ 7} Appellant has timely appealed raising as her sole assignment of error:
 {¶ 8} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY ADMITTING AN ADDENDUM TO THE BAC DATAMASTER INSTRUMENT CHECK FORM INTO EVIDENCE."
 I. {¶ 9} The parties agree that the sole issue in this case is whether the admission of the "BAC DATAMASTER STATEMENT REGARDING CALIBRATION CHECK DATED" (hereinafter, addendum) at the suppression hearing, was erroneous.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning *Page 4 
(1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App. 3d 592, 621 N.E.2d 726.Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App. 3d 37,619 N.E. 2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96, 641 N.E. 2d 1172; State v. Claytor (1993), 85 Ohio App. 3d 623, 627,620 N.E.2d 906; and State v. Guysinger, supra.
 {¶ 11} In State v. French, 72 Ohio St. 3d 446, 449, 1995-Ohio-32,650 N.E. 2d 887, the Ohio Supreme Court held that a defendant must use a motion to suppress in order to contest the admissibility of blood-alcohol test results on foundational grounds that relate to compliance with the directives of the Director of Health. Specifically, if the defendant contends that the test is not admissible because: (1) the sample was not withdrawn within two hours of the time of the alleged violation; (2) the analysis was not conducted in accordance with methods approved by the Director of Health; or (3) the test was not conducted by a qualified permit holder, the defendant must file a motion to suppress.French, supra, at paragraph one of the syllabus. Failure to do so or, alternatively, failure to succeed on the merits of the motion will result in admission of the test results without the necessity of the State laying a foundation on these issues. Id. *Page 5 
 {¶ 12} However, French specifically states that a defendant may challenge blood-alcohol test results at trial under the Rules of Evidence. Id. at 452, 650 N.E. 2d 887. "Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised at trial." Id.; State v. Edwards, 107 Ohio St.3d 169, 171, 2005-Ohio-6180 at ¶ 16,837 N.E.2d 752, 757; State v. Luke, Franklin App. No. 05AP-371,2006-Ohio-2306 at ¶ 26.
 {¶ 13} R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. State v.Plummer (1986), 22 Ohio St. 3d 292, 294, 490 N.E. 2d 902; State v.Morton (May 10, 1999), 12th Dist. No. CA98-10-131; State v.Raleigh, Licking App. No. 2007-CA-31, 2007-Ohio-5515 at ¶ 40. Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. Plummer, supra at syllabus. In determining whether the State substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Williams (1992),82 Ohio App.3d 39, 610 N.E .2d 1188; State v. Raleigh, supra.
 {¶ 14} Judicial officials at suppression hearings may rely on hearsay and other evidence to determine whether alcohol test results were obtained in compliance with methods approved by the Director of Health, even though that evidence may not be *Page 6 
admissible at trial. State v. Edwards, supra at paragraph 2 of the syllabus. [Citing Evid. R. 101(C) (1)].
 {¶ 15} In the case at bar, appellant does not identify with specificity the particular administrative regulation or statute that was not complied with during the pre-and post calibration of the breath-testing instrument.
 {¶ 16} A brief synopsis of the process to test appellant's breath and requirements to admit that test as evidence is necessary. "To ensure the accuracy of the BAC Datamaster, OAC 3701-53-04(A) dictates that an instrument check of a BAC Datamaster must be conducted by a senior operator within 192 hours of the last instrument check. A checklist must be followed when conducting the instrument check. The senior operator conducting the instrument check is to mark off the checklist steps which have been met. During the instrument check, a "simulator" is used to simulate a person's breath. An instrument check solution containing aknown level of alcohol is used to provide the alcohol to the simulated breath. In order to conduct the test in accordance with the procedures outlined in OAC 3701-53-04(A) and to achieve proper results, the simulator must simulate human breath by being at 34 degrees .2 degrees Celsius. The checklist requires the senior operator to confirm that the simulator was 34 degrees .2 degrees Celsius, but does not require that the exact temperature be recorded. A BAC Datamaster passes the instrument check if it registers a test reading within the target value range of at or within five one-thousandths (0.005) grams of the known instrument check solution's known target value of grams of alcohol per 210 liters. In other words, based on the information provided by the manufacturers of the alcohol test solution, the BAC Datamaster should register a certain reading if the Datamaster *Page 7 and the simulator are working correctly." State v. Nichols, Coshocton App. No. 01CA016, 2002-Ohio-4048 at ¶ 49.
 {¶ 17} In State v. Ward (1984), 15 Ohio St.3d 355 474 N .E.2d 300 the Ohio Supreme Court held "[c]ertified copies of police logs showing calibration of intoxilyzer equipment are admissible against a defendant in a prosecution for violation of R.C. 4511.19, despite the absence of the calibrating officer at trial." Id. at syllabus. The Court noted that the public records exception to the hearsay rule existed at common law before the adoption of the Ohio Rules of Evidence. Ward, supra at 357, 474 N.E.2d at 302. (Citing State v. Walker (1978), 53 Ohio St. 2d 192,374 N.E.2d 132 and R.C. 2317.42). This Court has found admission of the calibration documents does not violate a defendant's Sixth Amendment right of confrontation under Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354. Village of Granville v. Graziano, Licking App. No. 2006CA00070, 2007-Ohio-1152; State v. Pumphrey, Licking App. No. 2006CA00054, 2007-Ohio-251; Village of Granville v. Eastman, Licking App. No. 2006CA00050, 2006-Ohio-6237.
 {¶ 18} At the hearing on her motion to suppress, appellant did not challenge the admissibility of the pre-and post breath test instrument check forms. (State's Exhibit Nos. 2; 4). (T. at 71-72). The appellant likewise did not object to the admission into evidence of the senior operator permit for the calibrating officer. (State's Exhibit 4). The Lot or Batch number certificate for the Instrument Check Solution, as well as a photocopy of the individual bottle label, was admitted without objection. (State's Exhibit 6). Accordingly, the addendum utilized by the trooper in the case at bar is merely *Page 8 
cumulative to the extent that it recites information admitted into evidence through the aforementioned State's Exhibits.
 {¶ 19} OAC Section 3701-53-04(A)(1) provides: "(A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
 {¶ 20} "(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath-testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced."
 {¶ 21} At the suppression hearing, appellant offered State's Exhibit 2 and State's Exhibit 4, two documents entitled "Instrument Check Form," evidencing the pre-and post-breath test instrument checks, respectively. The seal of the "Department of Health, State of Ohio" appears at the head of the check forms, as well as the title: "Bureau of Alcohol and Drug Testing." The check forms also reference "Rule 3701-53-04." Exhibits 2 and 4 also contains a form labeled "Instrument Checklist," including the instruction, "when instrument displays "PLEASE BLOW," transmit using hand-held radio near the instrument without touching it, until RFI detector aborts the test." On both forms, the box next to the instruction is checked. The Instrument Checklist also instructs the senior *Page 9 
operators performing RFI checks to "transmit using hand-held radio," but do not state whether the radio used is one "normally used by the law enforcement agency."
 {¶ 22} The OAC Regulation specifically requires the instrument to be checked to detect RFI using a hand-held radio "normally used by the law enforcement agency." Village of Granville v. Graziano, supra; State v.Pumphrey, supra; Village of Granville v. Eastman, supra. In the case at bar the trial court accepted the addendum prepared by the Trooper who performed each calibration. (State's Exhibit 2 at page 2; State's Exhibit 4 at page 2). The form contains the following typewritten recitation: "[t]he instrument was checked for RFI using a hand-held radio normally used by our agency, to wit:" Next to this is the handwritten notation, "Motorola XTS 5000."
 {¶ 23} In the case at bar, appellant further asserted in his motion to suppress that it was possible the simulator thermometer was not accurate. The aforementioned Instrument Check Form includes the instruction "(4) With the simulator at 34 degrees .2 degrees Celsius," the box next to the instruction is checked. The addendum prepared by the Senor Operator contains the following typewritten recitation: "The simulator used was capable of measuring accurately to .2 degrees C as stated."
 {¶ 24} Initially, we note that we reviewed a similar argument inState v. Nichols, supra and in State v. Brandt, Tuscarawas App. No. 2002AP02008, 2002-Ohio-5474. Like the Nichols and Brandt Court, we find appellant herein is unable to demonstrate the State failed to substantially comply with the applicable regulations.
 {¶ 25} Like Nichols and Brandt, the instrument check in the matter sub judice was conducted before and after appellant's breath test. In both tests, the Datamaster returned test results indicating the Datamaster had accurately tested samples. Under *Page 10 
such circumstances, a Datamaster is deemed properly calibrated for use. OAC 3701-53-04. Generally, only when both the simulator and breath-testing instrument are working properly, will the instrument check provide a result within the allowable target value range. Id.
 {¶ 26} Appellant made no specific argument concerning the lack of refrigeration of the calibration solution in his motion to suppress, but did make mention of said requirement during the hearing. (T. at 60-61). The addendum prepared by the Senior Operator contains the following typewritten recitation: "The calibration solution used was kept under refrigeration after its first use, when not being used."
 {¶ 27} Appellant argues that the statements concerning the radio used during the RFI check, the accuracy of the thermometer, and the refrigeration of the solution contained in the addendum prepared by the Senior Operator are testimonial statements as described in Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, triggering the Confrontation Clause of the Sixth Amendment to the United States Constitution. We disagree. Rather, we find that the performance of the calibration check is simply a condition precedent to the admissibility of the BAC test results at trial. Whether the bodily substance withdrawn was analyzed in accordance with methods approved by the director of health is not a jury question and is to be decided by the court prior to trial. State v. Edwards, supra at 176, 2005-Ohio-6180
at ¶ 20, 837 N.E. 2d at 758. The calibration check is only relevant to that issue and therefore relevant only at the motion-to-suppress stage. Id. The statements concerning the calibration check at issue in this case are recordkeeping and foundational in nature. The sole purpose of the statements is to prove the reliability of the instrument. The *Page 11 
statement is not substantive evidence of the crime or directly determinative of appellant's guilt. Absent a showing of prejudice to appellant, the BAC test result is admissible.
 {¶ 28} In holding that sworn statements made by breath testing machine supervisor that the machine used to test defendant had been properly calibrated and tested for accuracy were not testimonial hearsay, and therefore were not subject to Confrontation Clause, the Hawaiian Court of Appeals noted:
 {¶ 29} "[T]he majority of state courts considering the issue have decided that Crawford does not bar the use of documentary evidence to establish the foundation for breath test results: Green v. DeMarco, 11 Misc. 3d 451, 812 N.Y.S.2d 772, 785 (N.Y.Sup.Ct. 2005) (admission of documentary evidence to establish foundation for admissibility of breath test results does not implicate core concerns of Confrontation Clause as interpreted by Crawford); State v. Carter, 326 Mont. 427, 114 P.3d 1001,1007 (2005) (defendant's confrontation right was not implicated by use of certification reports to demonstrate that Intoxilyzer 5000 was working properly, even though authors of the reports were not present to testify and be confronted); State v. Norman, 203 Or.App. 1, 125 P.3d 15,16-17 20 (2005) (admission into evidence of certificates reflecting that Intoxilyzer 5000 had been tested for accuracy, without oral testimony of technicians who prepared them, did not violate defendant'sSixth Amendment confrontation right); Luginbyhl v. Commonwealth,46 Va. App. 460, 618 S.E.2d 347, 355 (2005) (statements in breath test certificate relating to machine's good working order and the administering officer's qualifications were not testimonial statements);Napier v. State, 820 N.E.2d 144, 145 149 (Ind.Ct.App. 2005) (admission of breath test *Page 12 
instrument certification documents indicating that inspection and tests were performed on the machine on a specified date did not violate the rule set forth in Crawford); Rackoff v. State, 275 Ga. App. 737,621 S.E. 2d 841, 845 (2005), aff'd, 281 Ga. 306, 637 S.E.2d 706 (2006) (inspection certificate of instrument used to conduct defendant's breath test was not "testimonial" hearsay under Crawford); State v.Godshalk, 381 N.J.Super. 326, 885 A.2d 969, 972-73 (Law Div. 2005) (breath testing instrument inspection certificates not within the "testimonial evidence" category of Crawford because they are business records and official records of state police); Bohsancurt v.Eisenberg, 212 Ariz. 182, 129 P.3d 471, 472 480 (Ct.App. 2006) (quality assurance records of Intoxilyzer 5000 used to test defendant's breath sample qualify as business records and are not testimonial underCrawford); but see Shiver v. State, 900 So.2d 615
(Fla.Dist.Ct.App. 2005). While not controlling, the cases do amount to persuasive legal authority that the Supervisor's statements were not "testimonial" hearsay." State v. Marshall (HI Ct. App. 2007),114 Hawaii 396, 401-402, 163 P. 3d 199, 204-205.
 {¶ 30} Appellant has not demonstrated that the trial judge abused his discretion or that she was denied due process as a result of his consideration of the statements concerning the type of hand-held radio used by the officer when calibrating the machine, the capability of the thermometer to accurately measure to .2 degrees C, and the refrigeration of the check solution. Appellant simply has not demonstrated that the calibration checks affected the results of her breath test, much less that any failure to have the calibrating officer testify during the suppression hearing resulted in error detrimental to her. As previously noted, evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test *Page 13 
results may still be raised at trial. State v. Edwards,107 Ohio St.3d 169, 171, 2005-Ohio-6180 at ¶ 16, 837 N.E.2d 752, 757.
 {¶ 31} As a result, the trial court did not err in denying appellant's motion to suppress.
 {¶ 32} Appellant's sole assignment of error is overruled.
 {¶ 33} The judgment of the Municipal Court of Delaware County, Ohio is affirmed.
Gwin, P.J., Wise, J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Delaware County, Ohio is affirmed. Costs to appellant. *Page 1