[Cite as *State v. Butler*, 2013-Ohio-4451.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                      |
|--------------------------|---|------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.     |
|                          | : | Hon. John W. Wise, J.        |
| Plaintiff-Appellee       | : | Hon. Craig R. Baldwin, J.    |
|                          | : |                              |
| -vs-                     | : |                              |
|                          | : | Case No. 2013CA00053         |
| ALAN BUTLER              | : |                              |
|                          | : |                              |
| Defendant-Appellant      | : | O P I N I O N                |

CHARACTER OF PROCEEDING:     Criminal appeal from the Canton Municipal Court, Case No. 2012 TRC 8318

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 7, 2013

APPEARANCES:

For Plaintiff-Appellee

TASHA FORCHIONE
Canton City Prosecutor's Office
City Hall 7th Floor
Canton, OH 44702

For Defendant-Appellant

SAMANTHA LISY
Stark County Public Defender's Office
201 Cleveland Avenue S.W., Ste. 104
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant Alan Butler ["Butler"] appeals the February 13, 2013 Judgment Entry of the Canton Municipal Court denying his motion to suppress evidence. Appellee is the State of Ohio.

*Factual and Procedural Background*

{¶2} On December 23, 2012 at approximately 12:30 a.m., Officer Laurie Mans of the Waynesburg Police Department stopped the vehicle Butler was driving because it had only one headlight operating. During the course of the subsequent encounter, Butler admitted that he had been drinking. At that point, Officer Mans asked Butler to exit his vehicle to perform standardized field sobriety tests. Officer Mans performed some of the standardized field sobriety tests with Butler and observed his training partner administer additional test. Upon completion of the tests, Officer Mans determined that Mr. Butler was intoxicated. Officer Mans arrested Butler and obtained a urine sample from him.

{¶3} Brad Taylor from the Stark County Crime Lab testified that he has a bachelor's degree in chemistry from Mount Union College and he is certified by the Ohio Department of Health for alcohol analysis using the gas chromatography method. Taylor stated that he tested two samples of Butler's urine using headspace gas chromatography. The results of this testing showed the ethanol content in Mr. Butler's urine was zero point one-one three grams per deciliter (0.113% g/dl).

{¶4} On cross-examination, Taylor was asked if he could state a percentage of scientific accuracy in regards to the test he performed on the urine samples. Taylor stated, "There is no method in place to-to calculate any type of uncertainty of the

results." (T. at 44-45). Further, Taylor was asked if there was a manner in which the lab could present results with a percentage of accuracy, to which Mr. Taylor responded that there is a manner in which a "degree of uncertainty" can be determined, but is not currently in effect at the Stark County Crime Lab. (T. at 47-48). Finally, when asked if there was a degree of scientific certainty to which Mr. Taylor could testify that Mr. Butler's urine was over the point one-one (.11% g/dl) limit, Taylor said "I'm very confident in our procedures, and based on the two separate analysis, both results being above point one-one zero, I am confident to report that the result of point one-one three would be representative." (T. at 48).

{¶5} At the conclusion of the suppression hearing, the trial court read into the record its determination of facts and conclusions of law. The trial court determined that the urine test results were admissible.

*ASSIGNMENT OF ERROR*

{¶6} Butler raises one assignment of error,

{¶7} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AND COMMITTED AN ERROR OF LAW IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS DEFENDANT'S URINALYSIS."

I.

{¶8} Butler contends that because the laboratory has no known percentage of accuracy or know potential rate of error in the testing procedures, the urine test results are not admissible at trial and, therefore, the trial court erred in overruling his motion to suppress.

{¶9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v.* Burnside, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See B*urnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶10} In *State v. French,* 72 Ohio St.3d 446, 449, 1995-Ohio-32, 650 N.E.2d 887, the Ohio Supreme Court held that a defendant must use a motion to suppress in order to contest the admissibility of blood-alcohol test results on foundational grounds that relate to compliance with the directives of the Director of Health. Specifically, if the

defendant contends that the test is not admissible because: (1) the sample was not withdrawn within two hours of the time of the alleged violation; (2) the analysis was not conducted in accordance with methods approved by the Director of Health; or (3) the test was not conducted by a qualified permit holder, the defendant must file a motion to suppress. *French,* supra, at paragraph one of the syllabus. Failure to do so or, alternatively, failure to succeed on the merits of the motion will result in admission of the test results without the necessity of the State laying a foundation on these issues. *Id.*

**{¶11}** However, *French* specifically states that a defendant may challenge blood-alcohol test results at trial under the Rules of Evidence. *Id.* at 452, 650 N.E.2d 887. "Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised at trial." *Id.; State v. Edwards,* 107 Ohio St. 3d 169, 171, 2005-Ohio-6180 at ¶ 16, 837 N.E. 2d 752, 757; *State v. Luke,* Franklin App. No. 05AP-371, 2006-Ohio-2306 at ¶ 26.

**{¶12}** The principles thus established in *French* would have equal application to the analysis of any bodily substance, including urine.

**{¶13}** R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902(1986); *State v. Morton*, 12th Dist. Warren No. CA98-10-131, 1999 WL 296700 (May 10, 1999); *State v. Raleigh,* 5th Dist. Licking No. 2007-CA-31, 2007-Ohio-5515 at ¶ 40. Rather, if the state

shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. *Plummer,* supra at syllabus. In determining whether the State substantially complied with ODH regulations, the trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Williams*, 82 Ohio App.3d 39, 610 N.E.2d 1188(1992); *State v. Raleigh,* supra.

{¶14} As a result of the implementation of R.C. 4511.19, the legislature has given the director of the Ohio Department of Health ("ODH"), rather than the courts, the authority to determine which tests and procedures are generally reliable and therefore admissible in a prosecution. The Ohio General Assembly has legislatively determined that various alcohol determinative testing apparatuses and methods for testing are generally reliable and admissible. Section 4511.19 of the Ohio Revised Code provides, in pertinent part:

(D)(1) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.

* * *

The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual

possessing a valid permit issued by the director pursuant to section 3701.143 [3701.14.3] of the Revised Code.

{¶15} In the case of *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303(1984), the Supreme Court of Ohio held that R.C. 4511.19 represents a legislative determination that certain breath testing devices are generally reliable. This determination, the court explained, means that the statute has replaced the common law foundational requirements for admissibility. The court also explained that the foregoing passage of R.C. 4511.19 means that the legislature has delegated to the Director of the Ohio Department of Health, not the courts, the discretionary authority to determine which tests and procedures are generally reliable and thus admissible in a prosecution under the statute. Therefore, the *Vega* court held, "an accused may not make a general attack upon the reliability and validity of the breath testing instrument [.]" Id. at 190, 465 N.E.2d 1303.

{¶16} Since *Vega*, the Supreme Court of Ohio has repeatedly and consistently held that, "[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations." *Defiance v. Kretz*, 60 Ohio St.3d 1, 3, 573 N.E.2d 32(1991). *See, also, State v. French*, 72 Ohio St.3d 446, 451, 650 N.E.2d 887(1995); *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902(1986). This holding recognizes that the General Assembly has legislatively provided for the admission into evidence of alcohol test results, including breath and urine tests, from tests conducted upon those accused of violating R.C. 4511.19, so long as such tests were conducted in accordance with procedures adopted by the Director of the Ohio Department of Health.

**{¶17}** Appellant argues the trial court should have evaluated the admissibility under the test set forth in *Daubert v. Merrill Dow Pharmaceutical, Inc.* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469(1993). In *Daubert,* the trial judge must perform a "gate keeping" role to ensure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. In general terms, the reliability of an expert's opinion depends upon (1) the validity of the underlying theory, (2) the validity of the technique used to apply that theory, and (3) the proper application of the technique on a particular occasion. In *Daubert,* the United States Supreme Court identified a series of specific reliability inquiries that apply in the context of the "hard" or quantitative sciences. These factors include (1) whether a theory or technique can be and has been tested, (2) known error rates, (3) peer review and publication, and (4) general acceptance in the field.

**{¶18}** In *State v. Luke*, the Tenth District Court of Appeals observed,

This legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines. It follows, then, that because the *Daubert* inquiry involves only determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, the legislative mandate recognized in *Vega* forestalls the need for any *Daubert* analysis in cases such as the present one. That is why we agree with the holding of the Fifth Appellate District that, pursuant to *Vega*, "an attack on the accuracy and credibility of breath test devices in general is prohibited. Therefore, there is no need to

determine the reliability of the machine under a Daubert * * * standard."

*State v. Birkhold* (Apr. 22, 2002), 5th Dist. No. 01CA104, 2002-Ohio-2464,

¶ 19.

10th Dist. Franklin No. 05AP-371, 2006-Ohio-2306, ¶24. The principles thus established would have equal application to the analysis of any bodily substance, including urine.

**{¶19}** In the case at bar, where the record of the suppression hearing contains no evidence of noncompliance with any applicable regulation of the Ohio Department of Health, evidence that the accused seeks to offer for the purpose of showing that the machine was not in good working order on the date of his urine test, or the technician could not testify concerning a potential rate for error is irrelevant to the admissibility of the test result.

**{¶20}** While the accused may not challenge the general accuracy of a legislatively determined testing instrument, Butler could have challenged at trial the accuracy of his specific test result. *Columbus v. Day,* 24 Ohio App.3d 173, 174, 493 N.E.2d 1002 (10th Dist. 1985); *State v. Wang*, 5th Dist. Delaware No. 2007CA090048, 2008-Ohio-2144, ¶12. Thus, the accused may attempt to show that something went wrong with his test and consequently, the result was at variance with what the approved testing procedure should have produced. *Id.* Additionally, the accused may attack the test results pursuant to the rules of evidence and may also use expert testimony regarding the weight to be given to the evidence. *See generally State v. French,* 72 Ohio St.3d 446, 1995–Ohio–32 and *State v. Vega,* 12 Ohio St.3d 185 (1984).

**{¶21}** In the case at bar, the record of the suppression hearing contains no evidence of noncompliance with any applicable regulation of the Ohio Department of

Health. , As a result, the trial court did not err in denying appellant's motion to suppress.

Butler's sole assignment of error is overruled.

{¶22} The judgment of the Canton Municipal Court is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


_____
HON. CRAIG R. BALDWIN


WSG:clw 0930

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ALAN BUTLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2013CA00053 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. CRAIG R. BALDWIN